525 A.2d 1274

Professional Paramedical Services, Inc., et al., Petitioners *v.* Pennsylvania Public Utility Commission, Respondent.

Argued February 24, 1987, before Judges COLINS and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Gerald Gornish,* with him, *Barry F. Schwartz, Wolf, Block, Schorr & Solis-Cohen; Raymond A. Thistle, Jr.; Richard Lyle Berkman, Dechert, Price & Rhoads; Michael A. Tier* and *F. Emmett Fitzpatrick, Jr.,* and *Brewington W. Croswell,* for petitioners.

*H. Kirk House,* Assistant Counsel, with him, *Michael C. Schnierle,* Deputy Chief Counsel, and *Daniel P. Delaney,* Chief Counsel, for respondent.

*A. Taylor Williams,* with him, *Alan Kahn, Abrahams & Lowenstein,* for intervenor, Philadelphia Corporation For The Aging.

OPINION·BY JUDGE COLINS, May 21, 1987:

A group of Pennsylvania Public Utility Commission (PUC) regulated paratransit carriers in Philadelphia (petitioners), appeal from a declaratory order of the PUC which held that the service required under the Request For Proposal (Proposal) issued by the Philadelphia Corporation for Aging (PCA) was not exclusive service and did ·not require PUC-certificated passenger carriers to violate various tariff provisions of the Public Utility Code, 66 Pa. C. S. §§101-3315, and PUC regulations.

On May 6, 1985, six paratransit operators and one "call" or "demand" carrier filed a Petition for Declaratory Order with the PUC, alleging that uncertainty existed regarding the legality of the PCA's Proposal and the performances of services thereunder. PCA is a non-profit, private corporation which has been designated as an "area agency for the aging" by the Commonwealth Department of Aging.

Among its other functions, PCA, as a contractor with the Department of Aging, arranges for the transportation of senior citizens between points in Philadelphia. A portion of PCA's program, involving senior citizens 65 years of age or older, is subsidized in part by funds derived by the Pennsylvania State Lottery Fund pursuant to Section 203(5)(iii) of the Pennsylvania Urban Mass Transportation Law (PUMTL), Act of January 22, 1968, P.L. 42, *as amended,* 55 P.S. §600.203(5)(iii), as administered by the Pennsylvania Department of Transportation (DOT). Pursuant to Section 203(5)(iii) of PUMTL (203 Program), DOT will subsidize and pay 90% of the individual fare for a shared ride directly to a properly-authorized PUC-certificated carrier participating in the 203 Program, while the other 10% is paid to such carrier by the senior citizen or by the third party, such as PCA.

The PUC has jurisdiction over the regulation of common carriers of passengers by motor vehicles. The petitioners are all common carriers of passengers in paratransit service, duly certificated by the PUC and are all participants in the 203 Program. The petitioners asserted that some parts of the Proposal, issued by PCA to provide senior citizens with transportation in the Philadelphia area to various senior citizen centers, violated the rules and regulations of the PUC and certain statutes of the Commonwealth.

The PUC, on June 21, 1985, without holding an evidentiary hearing, issued its declaratory order determining that the Proposal did not require exclusive service in violation of 52 Pa. Code §29.353(1), and that it did not violate the limitations on "call" or "demand" service. The PUC also declared that the hourly rate structure was prohibited to call or demand carriers pursuant to 52 Pa. Code §29.316(a) *but was* permitted to paratransit carriers pursuant to 52 Pa. Code §29.355. Finally, the PUC declined to rule on petitioners' allegation that the Proposal's rate structure violated the 203 Program, stating, "in view of the clear legislative directive that the Department of Transportation has broad responsibility over Section 203 funding, petitioners' concerns on this issue would be more appropriately addressed to the Department of Transportation."

On appeal, petitioners contend that each of these actions and declarations by the PUC was error. In response, the PUC argues that each of its declarations is supported by substantial evidence, but additionally asserts that the petition for review should be quashed because a declaratory order entered by the PUC is not a final appealable order and, thus, is not properly before our Court.

A declaratory order entered by the PUC is appealable to this Court as a final adjudication. 66 Pa. C. S.

§331(f) provides: *"Declaratory Orders—*The commission, with like effect as in the case of other· orders, and in its sound discretion, may issue a declaratory order to terminate a controversy ,or remove uncertainty." The language "with like effect as in the case of other orders" indicates that declaratory orders are appealable.

Although there appears to be no case law specifically on point, declaratory orders meet the general test of an adjudication and petitioners meet the definition of an aggrieved party. *See* 2 Pa. C. .S. §101. Petitioners are bound by and entitled to rely on that order in determining whether or not they could bid hourly rates under their PUC authority. PCA also has the right to rely on the fact that the PUC will assert no action against it or any of the carriers who contract with it under an hourly rate contract based on the PUC's decision. If it were not an appealable order, a party to that order could find itself bound to follow that order·or risk penalties under 66 Pa. C. S. §§3301-3302, but not have the opportunity to challenge that order by filing a petition to review it. Thus, the· order must be deemed an adjudication and the petitioners deemed an aggrieved party. The PUC's declaratory order is appealable.

·Petitioners' contention that the PUC erred in making its decision without having an evidentiary hearing is without merit. Essentially, petitioners contend that the nature of the Proposal would, in effect, require that exclusive service and group (charter) sevice be rendered, in violation of the PUC's own regulations and that if a hearing had been held, they would have adduced evidence. so demonstrating. However, the record indicates that petitioners' only attempt to seek a hearing was a letter dated June 19, 1985, two days before· the PUC's order, and presumably not received by the PUC until after its decision was rendered. The PUC, as it was free to do, concluded that it had a sufficient basis, based on

the facts set forth in the petition before it, from which to make a determination. It was petitioners' obligation to state in the petition all facts necessary to support its petition. 52 Pa. Code §5.42(a).

We next turn to whether the PUC abused its discretion in declining to rule on the PUMTL/hourly rate issue. The PUC's order states in part:

> In the first instance, the Department of Transportation is charged with administering the funding of transportation services under Section 203. 55 Pa. C. S. [sic] §600.203(5)(v). This Commission's role in such programs is limited to assisting the Department of Transportation in developing reasonable per mile or trip fare limits for Section 203 funding. In view of the clear legislative directive that the Department of Transportation has broad responsibility over Section 203 funding, Petitioners' concerns on this issue *would more appropriately be addressed to the Department of Transportation.* (Emphasis added.)

Order at page 2.

Such an explanation was both proper and permitted in view of the discretionary nature of declaratory orders.

The PUC's authority to issue declaratory orders, as we have indicated, is found at 66 Pa. C. S. §331(f), which statute plainly vests the decision of whether or not to issue a declaratory order upon the "sound discretion" of the PUC. Although there must be uncertainty or a controversy before such an order may issue, the existence of uncertainty or a controversy does not require the PUC to issue a declaratory order. As we previously stated, such a decision is discretionary.

The scope of review in cases involving discretionary acts of an agency is limited to "determining whether there has been a manifest and flagrant abuse of discre-

tion or a purely arbitrary execution of the agency's functions or duties." *Lynch v. Urban Redevelopment Authority of Pittsburgh*, 91 Pa. Commonwealth Ct. 260, 266, 496 A.2d 1331, 1335 (1985). In this context, this Court has also noted that the fact that a reviewing court may have a different opinion is not sufficient to interfere with an agency's action. *Id*. The plain language of the statute makes it clear that the foregoing scope of review applies here.

Furthermore, the directive to DOT under the PUMTL is contained in Section 203(5)(v), which provides in pertinent part:

> The department [DOT] shall promulgate such rules and regulations as are necessary to carry out the purpose of this subparagraph. The department, *in consultation with* the [PUC] and the Department of Aging, shall establish reasonable per mile or trip fare limits for purposes of section 203(5)(ii) and (iii).

55 P.S. §600.203(5)(v). (Emphasis added.)

Thus, the legislature has directed DOT, and not the PUC, to implement the PUMTL. In view of this broad directive to DOT, it cannot be said that the PUC abused its discretion or acted arbitrarily in referring petitioners to that agency.

We next turn to the question of whether there is substantial evidence to support the PUC's determination that the Proposal did not require exclusive service in violation of PUC regulations. Petitioners argue that the Proposal, through its requirement of hourly rates and other provisions, effectively requires a carrier to provide exclusive use charter service, a type of group and party service under 52 Pa. Code §29.322, in violation of 52 Pa. Code §29.353, which regulation permits transportation only on a non-exclusive basis and specifically prohibits group and party service as described at

52 Pa. Code §§29.321-29.324. The definition of exclusive service is found in 52 Pa. Code §29.1: "Transportation on any given trip when the first or principal person, party, or group hiring the vehicle has the exclusive right to determine where, when, or if any other passengers shall be carried on that trip." A review of the Proposal shows that various senior citizen centers set forth specific hour spans for a minimum required number of vans to be available to the centers during such periods of time. Petitioners argue that although the Proposal deliberately does not state that its requirements entail exclusive use or that a vehicle taking a group from the center to an activity and return may not pick up other passengers, as a practical matter, a carrier could not perform the service required by the Proposal (meeting time schedules within 15 minutes of the reserved time at least 98% of the time for each calendar month) without making the vehicle available for exclusive use for the center or site.

However, the PUC observed that the service requested, insofar as it entails picking up persons at their homes, transporting them to centers and returning them home, appears to be the epitome of paratransit service. The PUC also found that the service for groups originating at social centers could be managed by grouping two or more centers, such that exclusive use would not be required.

The PUC further concluded that paratransit operators are permitted to charge hourly rates pursuant to 52 Pa. Code §29.355 and that this does not require petitioners to violate 52 Pa. Code §29.353(2) by providing group and party service under 52 Pa. Code §29.322. A chartered vehicle is one where "the charge . . . is based upon the transportation of a group and not upon the number of persons carried and for which payment is made by a single individual or organization. . . ." 52 Pa. Code §29.322(1)(i).

Petitioners contend that the payment of an hourly rate in and of itself results in charter service or exclusive service because it is impossible for a passenger or third party sponsor to contract with a carrier to pay an hourly rate for specific trips, while also allowing the carrier to pick up other passengers during the ride. They argue that where the passenger paying an hourly rate shares a ride with other persons with similar rates, it is impossible to know how to charge because it is impossible to know which passenger is responsible for which portion of time. However, the PUC determined that it is possible to allocate charges, provided that petitioners use different administration techniques than those they are currently accustomed to. Thus, by employing different administrative and accounting procedures, hourly rates do not automatically preclude non-exclusive use.

Clearly, the PUC's findings in the order are matters of regulatory interpretation. Petitioners presented a proposed contract and requested the PUC to issue a declaratory order finding that the proposed contract required carriers to violate certain PUC regulations. In matters involving regulatory interpretation, we have held that "An agency's interpretation of its own regulations, unless clearly erroneous or inconsistent with the statutory mandate, is normally entitled to controlling weight." *Hamburg v. North Penn School District,* 86 Pa. Commonwealth Ct. 371, 376, 484 A.2d 867, 870 (1984). Our Supreme Court has also indicated that courts should proceed with caution where an agency's interpretation of its own regulation is at issue. *Norfolk and Western Railway Co. v. Pennsylvania Public Utility Commission,* 489 Pa. 109, 413 A.2d 1037 (1980).

We conclude that there is substantial evidence in support of the PUC's determination that the Proposal would not require, per se, exclusive service or "group and party" service. Although avoidance of these prohib-

ited services might require greater administrative effort than petitioners care to provide, such a factor is not an appropriate basis for our reversal of the PUC's order.

Accordingly, the order of the PUC is affirmed.

ORDER

AND NOW, this 21st day of May, 1987, the order of the Pennsylvania Public Utility Commission in the above-captioned matter, is hereby affirmed.