IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Germantown Cab Company,　　　　　　 :
　　　　　　Petitioner　　　　　 :
　　　　　　　　　　　　　　　　　 :
　　　v.　　　　　　　　 : No. 1850 C.D. 2013
　　　　　　　　　　　　　 : Submitted: June 27, 2014
Public Utility Commission,　　　　 :
　　　　　　Respondent　　　　 :


BEFORE:　　HONORABLE DAN PELLEGRINI, President Judge
　　　　　　HONORABLE ROBERT SIMPSON, Judge
　　　　　　HONORABLE ANNE E. COVEY, Judge


OPINION BY
PRESIDENT JUDGE PELLEGRINI　　　　FILED: July 23, 2014


　　　　　Germantown Cab Company (Germantown) petitions for review of the Pennsylvania Public Utility Commission (Commission) order adopting the Initial Decision of an Administrative Law Judge (ALJ); dismissing Germantown's motion for a declaratory order that the Commission does not have exclusive jurisdiction over all of its operations; sustaining the Commission's Complaint regarding violations found in vehicles in Germantown's fleet; and imposing a $9,950.00 civil penalty. We affirm.

　　　　　Germantown has a certificate of public convenience (CPC) to provide call or demand service in a limited area of the City of Philadelphia (City) and in parts of Montgomery County. As a result of an amendment to the Parking Authorities

Law, commonly known as Act 94,[1] the regulation of taxicabs and limousines in the City changed from the Commission to the Philadelphia Parking Authority (Authority), whose power extends to persons or corporations providing these services between points in the City, from any point in the City to any point in the Commonwealth or outside, and from any point in the Commonwealth to any point in the City if the request for service is by call to a centralized dispatch system. 53 Pa. C.S. §5714(c). The Commission retained jurisdiction over service outside the City of Philadelphia.

In August 2010, the Commission's Bureau of Transportation and Safety (BTS), now the Bureau of Investigation and Enforcement (I&E), filed a Formal Complaint alleging that annual inspections of Germantown's fleet designated to serve non-City passengers revealed 73 violations, including 25 mechanical violations; 15 meter violations; 22 passenger violations; and 11 other violations and sought a $9,950.00 civil penalty. (Reproduced Record (R.R.) at 2-12). Germantown filed an answer admitting that an inspection occurred, but denying the allegations in the Complaint. Before an ALJ, the Commission enforcement officers and their field supervisor testified regarding the violations that they observed. (R.R. at 22-214).

During cross-examination of one of the enforcement officers, Germantown questioned the Commission's jurisdiction to prosecute the violations "[b]ecause it's our position that either the Commission or the Authority has

---

[1] Act of December 30, 2001, P.L. 2001, reenacted and amended by the Act of July 16, 2004, P.L. 758 (Act 94), *as amended*, 53 Pa. C.S. §§5501-5517; 5701-5745.

jurisdiction to regulate [Germantown] but not both." (R.R. at 85). While not raised in the pleadings, the ALJ, however, permitted Germantown to file a motion for a declaratory order pursuant to Section 331(f) of the Pennsylvania Public Utility Code[2] declaring that there is no dual regulation by the Commission and the Authority which involves conflicting tariffs and vehicle requirements. Germantown contended that since its franchise was awarded by the Commission, not the Authority, the Commission has exclusive jurisdiction and regulatory authority over partial rights of taxicab[3] companies such as Germantown under Act 94[4] and that this assertion of authority results in dual regulation The Commission's I&E filed preliminary objections to the motion which, among other things, argued that Germantown failed to provide a basis for its request to dismiss, and asserted that the issue of whether the Commission had concurrent jurisdiction with the Authority or exclusive jurisdiction was irrelevant to the instant enforcement action because the Commission's jurisdiction was conceded. (*Id.* at 284).

---

[2] 66 Pa. C.S. §331(f). The declaratory order procedure is authorized by 66 Pa. C.S. §331(f) which provides that "[t]he commission, with like effect as in the case of other orders, and in its sound discretion, may issue a declaratory order to terminate a controversy or remove uncertainty."

[3] A partial-rights taxicab is defined as "[a] taxicab authorized by the Authority to provide common carrier call or demand transportation of persons for compensation on a non-citywide basis, under Chapter 1015 (relating to partial rights taxicabs) and section 5711(c)(2) of the [Parking Authorities Law, 53 Pa. C.S. §5711(c)(2)] (relating to power of authority to issue certificates of public convenience) and 5714(d)(2) of the [Parking Authorities Law, 53 Pa. C.S. §5714(d)(2)]." 52 Pa. Code §1011.2. A "medallion taxicab" is "[a] taxicab certified by the Authority to provide citywide taxicab service and affixed with a medallion by the Authority as provided in §1013.2 (relating to attachment of a medallion) and section 5714(a) of the [Parking Authorities Law, 53 Pa. C.S. §5714(a)] (relating to certificate and medallion required)." *Id.*

[4] The General Assembly subsequently amended Act 94 by the Act of July 5, 2012, P.L. 1022, No. 119 (Act 119).

The ALJ's Initial Decision dismissed Germantown's motion for a declaratory order, finding that the Commission had jurisdiction over the violation proceedings because Germantown has a Commission CPC; it submitted to the Commission's inspection, filed an answer to the violations, and participated in the hearing; and Germantown asserted that the Commission had exclusive jurisdiction. The ALJ stated that Germantown's "frustration concerning conflicting regulations is noted but that is not a reason to dismiss this complaint." (R.R. at 305). The ALJ determined that Germantown "has failed to provide compelling reasons for the issuance of a declaratory order," and "failed to submit reasons for the matter to be dismissed." (*Id.* at 306). The ALJ sustained the Commission's Complaint and directed Germantown to pay a $9,950.00 civil penalty and desist from further violations of the Public Utility Code and the Commission's regulations.

Germantown filed exceptions to the ALJ's Initial Decision with respect to the motion for a declaratory order,[5] arguing that the dual regulation by the Commission and the Authority resulted in its charging rates in the City different from the tariff on file with the Commission thereby violating the Commission's regulations. Germantown also argued that the Commission and the Authority exceeded their statutory powers in executing a Jurisdictional Agreement in 2005 which improperly permits carriers to self-designate the vehicles that are subject to its regulation because it is "unworkable" dealing with conflicting regulations regarding

---

[5] Germantown also filed a General Exception, alternatively arguing that the Authority had sole jurisdiction over its operations under the amendments in Act 119. (R.R. at 313-314). Germantown also took exception to the total amount of the fines that the ALJ imposed, arguing that the findings in her decision only support a total fine of $3,250.00. (*Id.* at 320).

4

meters and decals in the taxicabs. (R.R. at 317-319). Germantown asserted that under this dual regulatory system, only non-designated vehicles are subject to the Commission's jurisdiction, and the Commission did not establish whether the vehicles that were inspected were non-designated and, therefore, under its jurisdiction. (*Id.*). The Commission's I&E filed Reply Exceptions contradicting Germantown's claims. (*Id.* at 322-327).

The Commission denied Germantown's exceptions. Regarding the exception relating to the motion for a declaratory order, the Commission found that Germantown did not provide compelling reasons for issuing a declaratory order because the record is clear that the Commission has authority over Germantown for purposes of resolving the Complaint in this case. The Commission also rejected Germantown's claim that the Commission should regulate the rates that the Authority requires Germantown to charge or require that these rates be filed with the Commission because Act 119 gives such power and to do so would be contradictory to the Legislature's grant to the Authority to regulate the rates within the City. Accordingly, the Commission adopted the ALJ's decision; dismissed Germantown's motion for a declaratory order; sustained the Commission's Complaint; and directed Germantown to pay the $9,950.00 civil penalty.

Germantown filed a motion for reconsideration of the Commission's order,[6] arguing that the Commission erred in concluding that it does not have

---

[6] 66 Pa. C.S. §703(g) states:

> **(g) Recission and amendment of orders.**—The commission may, at
> any time, after notice and after opportunity to be heard as provided in

**(Footnote continued on next page…)**

exclusive jurisdiction to regulate Germantown's operations and that it shares jurisdiction with the Authority. Addressing Germantown's reconsideration motion, the Commission modified the language of its prior order to reflect that Germantown has authority from the Commission to operate in parts of Montgomery County and in parts of the City, and that it is considered a partial-rights taxicab company because it is authorized to provide service in a limited territory of the City. The Commission determined that Germantown's remaining reasons for reconsideration did not satisfy the standards for reconsideration because the foregoing jurisdictional claims were not "new and novel arguments" not previously heard or considered by the Commission. (R.R. at 397).

In this appeal,[7] Germantown alleges that the Commission erred in failing to grant its motion for a declaratory order because the Commission has exclusive

---

**(continued…)**

> this chapter, rescind or amend any order made by it. Any order rescinding or amending a prior order shall, when served upon the person, corporation, or municipal corporation affected, and after notice thereof is given to the other parties to the proceedings, have the same effect as is herein provided for original orders.

[7] Our scope of review in reviewing Commission declaratory orders is rather limited. As we have explained:

> The [Commission]'s authority to issue declaratory orders, as we have indicated, is found at 66 Pa. C.S. §331(f), which statute plainly vests the decision of whether or not to issue a declaratory order upon the "sound discretion" of the [Commission]. Although there must be uncertainty or a controversy before such an order may issue, the existence of uncertainty or a controversy does not require the [Commission] to issue a declaratory order. As we previously stated, such a decision is discretionary.

**(Footnote continued on next page…)**

6

jurisdiction over all of its operations. It argues that the original CPC issued by the Commission that outlines the manner and territory in which it is authorized to operate has never been amended, modified or rescinded, and is the sole authority under which it operates. As a result, it contends that the Commission's determination that it now only regulates Germantown's operations outside of the City improperly reduced its authorized service area without a hearing or due cause shown thereby violating its due process rights. Germantown also contends that the Commission's determination violated due process because it fails to give Germantown fair notice and warning as to how to defend against the instant violations because the Commission and the Authority have differing fare structures and differing regulations regarding vehicle markings and Complaint decals.

The Commission did not abuse its discretion in denying Germantown's request for a declaration for a number of reasons. First, due to Germantown's concession that the Commission had jurisdiction over its operations and the instant

---

**(continued…)**

> The scope of review in cases involving discretionary acts of an agency is limited to "determining whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's functions or duties." In this context, this Court has also noted that the fact that a reviewing court may have a different opinion is not sufficient to interfere with an agency's action. The plain language of the statute makes it clear that the foregoing scope of review applies here.

*Professional Paramedical Services, Inc. v. Pennsylvania Public Utility Commission*, 525 A.2d 1274, 1277 (Pa. Cmwlth. 1987), *appeal denied*, 538 A.2d 879 (Pa. 1988) (citation omitted).

violation proceedings, the issue of whether the Commission had concurrent jurisdiction with the Authority or exclusive jurisdiction was irrelevant to the instant enforcement action. No matter how the Commission ruled on the declaratory order motion, it still would have jurisdiction to hear the Complaint.

Moreover, Germantown's assertion that the Commission has exclusive jurisdiction over all of its operations is without merit. In 2001, the General Assembly codified and amended the Parking Authorities Law, setting forth a separate statutory regime for the Parking Authority of Philadelphia. As the Supreme Court has recognized, by enacting Act 94, the General Assembly repealed the former Medallion Act,[8, 9] under which the Commission regulated all taxicab service in Pennsylvania

---

[8] Section 22(1) and (4) of Act 94 states, in pertinent part:

The following shall apply:

(1) The [commission]'s … powers, duties, … rights and obligations which are utilized or accrue in connection with the functions under 66 Pa. C.S. Ch. 24 … in cities of the first class shall be transferred to the [authority] in accordance with an agreement between the commission and the authority.

\* \* \*

(4) … The commission and the authority are empowered to resolve by mutual agreement any jurisdictional issues that may be associated with the transfer. Any agreement shall be reported to the Appropriations Committee of the Senate and the Appropriations Committee of the House of Representatives and will be considered effective unless either the Senate or the House of Representatives rejects the submitted agreement by resolution within ten legislative days of submission. Upon becoming effective, an agreement shall be published in the Pennsylvania Bulletin.

**(Footnote continued on next page…)**

8

including in the City, and reenacted and amended the Parking Authorities Law by adding Chapter 57, thereby transferring jurisdiction and regulatory oversight over taxicab and limousine services and operations in the City from the Commission to the Authority. *Germantown Cab Co. v. Philadelphia Parking Authority*, 36 A.3d 105, 107 (Pa. 2012). *See also Rosemont Taxicab Co., Inc. v. Philadelphia Parking Authority*, 68 A.3d 29, 31 (Pa. Cmwlth. 2013), *appeal denied*, 84 A.3d 1066 (Pa. 2014) ("In 2004, the General Assembly transferred the responsibility for regulating … taxicab service in [the City] from the Commission to the [Authority]. *See* [Act 94]. The [Authority]'s authority with respect to this new regulatory regime is set forth in Chapter 57 of the [Parking Authorities Law], *as amended*, 53 Pa. C.S. §§5701-5745. Otherwise, the [Commission] remains responsible for regulating limousine and taxicab service in Pennsylvania….").

---

**(continued…)**

Pursuant to Section 22(4) of Act 94, the Commission and the Authority entered into a Jurisdictional Agreement in 2005 which states, in pertinent part:

> Currently, there are carriers authorized to provide taxicab service to designated areas within Philadelphia on a non-city wide basis. Section 11 of Act 94 provides that the [Authority] has jurisdiction over these carrier's operations within Philadelphia. These carriers also hold authority from the Commission to serve designated areas outside Philadelphia. The Commission and the [Authority] agree that service provided under dual authority to/from points within the [Authority] authorized area (in Philadelphia) to/from points within the Commission authorized area (outside Philadelphia), will be regulated by the [Authority].

35 Pa. B. 1737 (2005).

[9] Section 19 of Act 94 also deleted 66 Pa. C.S. §1103(c) (relating to the Commission's authority to grant certificates of public convenience to provide taxicab service in the City).

Act 94 added the italicized language to the following sections of Subchapter B of the Parking Authorities Law.  53 Pa. C.S. §5711(c)(2) now authorizes the Authority "to issue a maximum of 1,600 certificates of public convenience for taxicab service *and no more than five certificates of public convenience for limited service* in any city of the first class." (Emphasis added).  In addition, 53 Pa. C.S. §5714(a) and (d) stated:

> **(a) Procedure.**—A vehicle may not be operated as a taxicab *with citywide call or demand rights* in cities of the first class unless a certificate of public convenience is issued *by an authority* authorizing the operation of the taxicab and a medallion is attached to the hood of the vehicle….
>
> *     *     *
>
> **(d) Other vehicles.**—
>
> (1) A vehicle which is not authorized by a certificate to provide call or demand service within cities of the first class but which is operated by the holder of a certificate of public convenience from the [Commission] authorizing call or demand service elsewhere in this Commonwealth may transport persons and property:
>
> (i) to cities of the first class in accordance with the service authorized under its certificate of public convenience; and
>
> (ii) from any point in a city of the first class to any point in this Commonwealth beyond that city of the first class if the request for service for such transportation is received by call to its radio dispatch service.
>
> (2) Carriers currently authorized to provide service to designated areas within cities of the first class on a non-citywide basis shall retain their authorization *through the authority*.  The authority shall not grant additional rights to

new or existing carriers to serve designated areas within cities of the first class. (Emphasis added).

*See also* 53 Pa. C.S. §5703(a) which now empowers the Authority to set just and reasonable rates "*for authority-certified* taxicab, limousine *or medallion taxicab* service…." (Emphasis added).

The Parking Authorities Law was again amended in July 2012 by the statute commonly known as Act 119, and made the transfer of regulatory authority over partial-rights taxicabs to the Authority even more explicit. Section 1 of Act 119 amended the definition of "Taxicab" in 53 Pa. C.S. §5701 to include motor vehicles carrying no more than eight people on a call or demand service basis to transport people for compensation either on "a citywide basis as authorized by a [CPC] and a corresponding medallion issued by the authority," or *on "a non-citywide basis as authorized by a [CPC] issued by the authority and without a corresponding medallion.*" (Emphasis added). Section 3 of Act 119 amended 53 Pa. C.S. §5711(a), empowering the Authority "to issue, suspend, cancel or revoke [CPCs] in accordance with this subchapter and orders or regulations of the authority." In addition, Section 3 of Act 119 amended 53 Pa. C.S. §5711(c)(2) by changing it to §5711(c)(2.1) and providing that "[t]here may be *no more than six* [*CPCs*] *for non-citywide call or demand service* in any city of the first class, subject to the exclusive jurisdiction of the authority." (Emphasis added).

Moreover, Section 3 of Act 119 also amended 53 Pa. C.S. §5714(a) and (d) which now states, in relevant part:

**(a) Vehicles generally.—**

(1) A vehicle may not be operated as a taxicab *with citywide call or demand rights* in cities of the first class *unless a [CPC] is issued by the authority* authorizing the operation of the taxicab and a medallion is attached to the hood of the vehicle….

\*    \*    \*

**(d) Other vehicles.—**

(1) A vehicle which is not authorized by a [CPC] to provide call or demand service within cities of the first class but which is operated by the holder of a [CPC] from the [Commission] authorizing call or demand service elsewhere in this Commonwealth may transport persons and property:

(i) to cities of the first class in accordance with the service authorized under its [CPC]; and

(ii) from any point in a city of the first class to any point in this Commonwealth beyond that city of the first class if the request for service for such transportation is received by call to its radio dispatch service.

(2) *Carriers authorized by the authority to provide taxicab service to designated areas within cities of the first class on a non-citywide basis* pursuant to section 5711(c)(2.1) (relating to power of authority to issue [CPCs[10]]) *shall retain their authorization in those areas of*

---

[10] Germantown argued before the Commission and argues before this Court that there is no evidence showing that it has been issued a CPC by the Authority to operate call or demand service on a non-citywide basis in any areas of the City. (Petitioner's Brief at 27; R.R. at 351-354). However, the Authority argues that Germantown applied for and that it did, in fact, issue one of the six partial-rights CPCs authorized under 53 Pa. C.S. §5711(c)(2.1) to Germantown, CPC No. 1011748-02, which authorizes Germantown to operate call or demand service in the portion of the City described in the CPC issued by the Commission. (Amicus Curiae Brief at 6). *See also* 43 Pa. B. 1728 (2013) publishing the proposed Authority regulations ("(c) Partial-rights taxicabs must be identified by a unique sequential number, as follows: (1) Taxicabs with rights through **[Germantown Cab Company (Pennsylvania Public Utility Commission A-00110733)]** **(Footnote continued on next page…)**

> *a city of the first class subject to the exclusive jurisdiction of the authority and orders and regulations of the authority issued under this chapter….* (Emphasis added).

As outlined above, under both Act 94 and Act 119, 53 Pa. C.S. §5714(d)(2) explicitly preserved Germantown's authority to conduct partial-rights operations in that portion of the City as stated in its Commission-issued CPC and specifically transferred regulatory authority over its operations in that area to the Authority. In addition, 53 Pa. C.S. §5703(a) explicitly empowers the Authority to set just and reasonable rates for the partial-rights operations in the City. As a result, Germantown's claims that its authorized service area as contained in the Commission-approved CPC has been reduced in violation of its due process rights or that the Commission retained exclusive authority over its partial-rights operations in the City as stated therein are without merit.

In *Germantown Cab Company* (No. 461 C.D. 2012, filed January 22, 2013), *appeal denied*, 79 A.3d 1100 (Pa. Cmwlth. 2013),[11] Germantown also argued

---

**(continued…)**

**Certificate No. 1011748-02** shall be numbered "G-1" for the first vehicle, "G-2" for the second vehicle, and continue according to that sequence until each taxicab is issued a unique number.") (emphasis in original). Nevertheless, as noted by the Commission, the issue of whether or not the Authority actually issued Germantown a CPC for partial-rights operations as provided in its Commission CPC is irrelevant because Germantown retained its "authorization" to operate such service under 53 Pa. C.S. §5714(d)(2) and exclusive regulatory authority over these operations was transferred to the Authority under that section. (Respondent's Brief at 14).

[11] We agree with Germantown that it is not collaterally estopped from raising this issue based on this memorandum opinion because the issues involved are not identical. Nevertheless, we may rely upon the opinion as persuasive authority that the Authority and not the Commission has jurisdiction over Germantown's partial-rights operations in the City. *See Kittrell v. Watson,* 88 **(Footnote continued on next page…)**

13

that the Authority had no jurisdiction over it and, therefore, had no authority to impose any fines, penalties or other sanctions. Quoting 53 Pa. C.S. §5714(d)(2) under Act 94, we rejected Germantown's assertion, stating:

> Where, as here, the language of a statute is free from ambiguity, any further deliberation as to its meaning is unwarranted. *Dee-Dee Cab, Inc. v. Pa. Pub. Util. Comm'n*, 817 A.2d 593, 598 (Pa. Cmwlth.[), *appeal denied*, 836 A.2d 123 (Pa. 2003)]. In addition, our Supreme Court has noted that in 2004 the legislature transferred a portion of the responsibility to regulate regional taxicab and limousine services from the PUC to the Authority pursuant to Act 94. *Germantown Cab Co.*[, 36 A.3d at 107]. Accordingly, we reject Germantown's argument that Section 5714(d)(2) of Act 94 did not empower the Authority to regulate partial-rights taxicabs in Philadelphia at the time of the citation.

*Id.*, slip op. at 3 (footnote omitted).[12] As our Supreme Court stated in *Blount v. Philadelphia Parking Authority*, 965 A.2d 226, 232 (Pa. Cmwlth. 2009), "[t]he

---

(continued…)

A.3d 1091, 1098 n.5 (Pa. Cmwlth. 2014) ("Unreported panel decisions issued after January 15, 2008 may be cited for their persuasive value, but not as binding precedent. 210 Pa. Code §69.414.").

[12] *See also Bucks County Services, Inc. v. Philadelphia Parking Authority,* 71 A.3d 379, 392 (Pa. Cmwlth. 2013) ("[W]e do note that a recent unpublished opinion from this Court in [*Germantown Cab Company*] specifically rejected an argument from [Germantown] that the Authority lacked jurisdiction over partial-rights taxicabs under Act 94, citing section 5714(d)(2) of Act 94, 53 Pa. C.S. §5714(d)(2). Moreover, we noted in that case that the legislature recently amended section 5714(d)(2) of Act 94 to clarify that partial-rights taxicabs are subject to the Authority's exclusive jurisdiction….") (footnotes omitted); *Germantown Cab Company v. Philadelphia Parking Authority* (No. 476 C.D. 2012, filed May 30, 2013) slip op. at 2 n.1 ("Having reversed, we need not consider Germantown's argument that the Authority has no jurisdiction over partial-rights taxicab companies and, therefore, no authority to impose fines, penalties and other sanctions. We note, however, that this Court decided that issue in the Authority's favor in **(Footnote continued on next page…)**

[Authority] is responsible for the high volume Philadelphia area while the PUC is responsible for the remaining parts of the Commonwealth. 53 Pa. C.S. §5505(d). The two agencies' spheres of operation combine and **overlap** to create a system of ground transportation that is essential to the welfare of the Commonwealth 'as a whole.' 53 Pa. C.S. §5701.1." (Emphasis added).

Finally, Germantown's claim that its due process rights were violated because the Commission's determination fails to give it fair notice and warning as to how to defend against the instant violations due to differing fare structures and regulations is also without merit. The testimony at the ALJ's hearing established that the meters in Germantown's taxicabs are programmed with two rates that can be applied in the appropriate circumstance at the press of a button: Rate 1 is the Authority's rate that is applicable to all medallion and partial-rights taxicabs that work in the City; and Rate 2 is the Commission's rate that is applicable to taxicabs working outside the City. (R.R. at 27, 33, 36, 42, 60, 157-158, 159-160). None of the 15 meter violations were based on the presence of the Authority's rate on a meter; they were either based on the absence of the Commission's rate on the meter or because a meter was improperly calibrated and operating either too slowly or too quickly. (*Id.* at 2-8, 26, 29, 54, 66, 68, 69, 71, 103, 105, 106, 107-108, 109, 110). Likewise, the violations relating to vehicle markings and Complaint decals were not based on the presence of those required by the Authority, but were based on the

---

**(continued…)**

[*Germantown Cab Company*]. Specifically, we concluded that the Authority had such jurisdiction pursuant to Section 5714(d)(2) of Act 94, 53 Pa. C.S. § 5714(d)(2).").

absence of those required by the Commission's regulations. (*Id.* at 3, 5-6, 50, 87-88, 127, 129). As a result, Germantown was well aware of the Commission's requirements and how to defend against the instant violations because it was admittedly subject to the Commission's regulations. In sum, the Commission did not err in denying Germantown's request that it declare that it retains exclusive subject matter jurisdiction and regulatory authority over Germantown in accordance with the terms and conditions of its Commission-issued CPC.[13]

Accordingly, the Commission's order is affirmed.

_____
DAN PELLEGRINI, President Judge

---

[13] Any reliance by Germantown on our opinion in *Rosemont Taxicab Co., Inc.* is misplaced because in that case, we specifically did not consider the issue of whether or not the Authority has regulatory authority over the transfer of a partial-rights CPC. As we explained:

> Because partial rights taxicab companies are regulated solely by the [Commission], Rosemont argued that the [Authority] lacks the ability to duplicate or override the regulatory standards of the Commission. However, because of amendments to the [Parking Authorities Law] on certificates of authority, Rosemont withdrew this part of its appeal in its reply brief. Rosemont now agrees that the [Authority] has authority to pass on the transfer of Bennett Taxicab's service area in [the City] to Rosemont. Accordingly, we need not address the issue of the [Authority]'s authority to approve the transfer of Bennett Taxicab's service area in [the City] to Rosemont.

68 A.3d at 40.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Germantown Cab Company,      :
                Petitioner       :
                                 :
          v.                : No. 1850 C.D. 2013
                                 :
Public Utility Commission,   :
                Respondent     :


# **O R D E R**


AND NOW, this 23rd day of July, 2014, the order of the Pennsylvania Public Utility Commission at No. C-2010-2175330 is affirmed.


_____
DAN PELLEGRINI, President Judge