IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fox Ridge Village, LP,                  :
                Petitioner    :
                          :
      v.                              : No. 854 C.D. 2020
                          : SUBMITTED: May 13, 2021
Public Utility Commission,              :
                Respondent    :


BEFORE:   HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                          FILED: June 9, 2021

Fox Ridge Village, LP (Developer) petitions this Court for review of the Public Utility Commission's (PUC) August 6, 2020 order adopting the initial decision of an administrative law judge (ALJ). The ALJ granted the petition of Pennsylvania-American Water Company (PAWC), which sought a declaratory order that PAWC complied with the Public Utility Code (Code),[1] the PUC's regulations, and PAWC's tariff[2] when it refused to accept water facilities constructed, or anticipated to be constructed, in Developer's residential development (the Development), and to provide the Development with water service. After review, we affirm.

---

[1] 66 Pa.C.S. §§ 101 – 3316.

[2] "Tariff," as defined in Section 102 of the Code, refers to a public utility's schedule of "rates, all rules, regulations, practices, or contracts involving any rate or rates . . . ." 66 Pa.C.S. § 102.

## I. Background

While this litigation has an extensive procedural history, the underlying facts are largely undisputed.

PAWC is a public utility that provides water and wastewater services throughout Pennsylvania. Certified Record (C.R.), Item No. 7, ALJ Initial Decision, Finding of Fact (F.F.) No. 1. Developer is a limited partnership, whose principal owner is Frank Zokaites (Zokaites). F.F. No. 2. The Development is located on approximately 30 acres of land in North Strabane Township (Township), Allegheny County. F.F. No. 3. On April 19, 2017, Developer and PAWC executed a Water Facilities Line Extension and Special Facilities Agreement (Agreement), which provided that Developer would construct the Development's water facilities in exchange for PAWC's agreement to provide water service to the Development. F.F. No. 17. PAWC's tariff granted PAWC the exclusive right to determine the size and type of water mains installed in the Development as well as any other facilities required to provide the Development with adequate water service. F.F. No. 8.

A steep hill in Phase II of the Development required the construction of a booster pump station to provide adequate water pressure to Phase II homes located above 1,220 feet in altitude. F.F. No. 6. In addition to the booster pump station, the Development's water facilities required three pumps and a standby generator, which would operate in the event of power loss. F.F. Nos. 9, 14-15. The Agreement specified that the two pumps used for domestic water service would provide 70 gallons per minute (gpm) and the third pump would provide 750 gpm for fire protection service. F.F. No. 19. Exhibit C of the Agreement included a proposal from USEMCO, a PAWC-approved vendor, for the construction of the booster pump station, including three pumps and a diesel generator. F.F. No. 21.

The Agreement further provided that the water facilities constructed by Developer would become part of PAWC's water system upon PAWC's inspection, testing, and acceptance of the water facilities. F.F. No. 18. PAWC would not provide water service to the Development unless PAWC approved all plans and specifications prior to construction of the water facilities and Developer obtained all necessary permits and met the requirements of "all governmental agencies having jurisdiction." F.F. No. 20.

On April 28, 2017, and May 12, 2017, PAWC contacted Developer to inquire about the submittal package PAWC would ordinarily have received from its approved vendors. F.F. No. 24. Developer subsequently notified PAWC that it had chosen to use a non-approved vendor, Dakota Pump, Inc. (Dakota), to construct the water facilities, which would include two separate electric substations in lieu of a generator. F.F. No. 25. On May 30, 2017, and June 5, 2017, PAWC informed Developer that the generator was necessary and that Dakota was not a PAWC-approved vendor. F.F. No. 26. PAWC also notified Developer in a June 11, 2017 letter that a booster station constructed by Dakota might not be acceptable to PAWC. F.F. No. 27. Thereafter, the parties engaged in extensive discussions regarding the terms of Dakota's proposal. F.F. Nos. 29-34, 36-40.

In August 2017, PAWC accepted a portion of the water facilities located within the Development and began providing water service at that time. F.F. No. 64. However, PAWC could not provide adequate water pressure to any homes in Phase II of the Development located above 1,220 feet. F.F. No. 65. As a result, PAWC refused to provide water service until Developer installed an acceptable booster pump station. *Id.*

On August 17, 2017, Developer filed a complaint in the Court of Common Pleas of Allegheny County (trial court), seeking an order compelling PAWC to accept the water facilities in the Development and provide water service thereto. ALJ Decision at 2. The trial court found that the PUC had primary and exclusive jurisdiction over the issues raised by Developer and dismissed Developer's claims on that basis. *Id.* The trial court's order also stayed the proceedings. *Id.*

On September 7, 2017, PAWC filed an Amended Petition for Declaratory Order (Amended Petition)[3] with the PUC, averring that it refused to accept the Development's water facilities because they did not meet the specifications established in the Agreement. R.R. at 5a-14a. PAWC's Amended Petition sought a declaration that, in refusing to accept the water facilities as constructed, or which Developer expected to construct, PAWC complied with the Code, the PUC's regulations, and PAWC's tariff. *Id.* at 7a.

Developer filed an answer, denying any alleged deficiencies in the Development's water facilities and asserting that the water pressure in the Development was sufficient and installation of a pump station was unnecessary. R.R. at 15a, 22a. Developer further asserted that PAWC's refusal to accept the Development's water facilities and provide water service exceeded the scope of PAWC's tariff and constituted a violation of the Agreement, with which Developer had fully complied. *Id.* at 23a, 25a. Developer requested injunctive relief compelling PAWC to install water meters in the Development and provide water service and requested a declaratory order that the generator required by PAWC under the Agreement was unnecessary. *Id.* at 27a, 29a. Additionally, Developer filed a

---

[3] PAWC filed a Petition for Declaratory Order on August 28, 2017. C.R., Item No. 95. It filed the Amended Petition to reflect the trial court's dismissal of Developer's claims and its stay of those proceedings. Reproduced Record (R.R.) at 6a.

4

separate Emergency Petition for Injunctive Relief (Emergency Petition),[4] which sought an order compelling PAWC to install water meters and water lines in the Development.[5] C.R., Item No. 93.

The ALJ issued an interim order on October 19, 2017, directing the parties to test the Development's water pressure in the presence of the Township Fire Department. C.R., Item No. 76. The resulting tests performed at a fire hydrant and a blow-off valve located at the top of a hill revealed residual pressure readings between 0 and 12 pounds per square inch (psi) and water flow of 531-1,100 gpm. ALJ Decision, F.F. Nos. 41-52. The Township Fire Department concluded that the fire hydrant was not capable of supplying the water pressure or water flow necessary to properly respond during a fire emergency. F.F. Nos. 55-56.

Following several weeks of continued negotiations, Developer filed petitions to withdraw its Emergency Petition and the Petition for Declaratory Order (collectively, Withdrawal Petitions), citing the existence of a settlement agreement between the parties. C.R., Item Nos. 56-57; R.R. at 52a-53a, 57a-58a. In its responsive filings, PAWC stated it had no objection to withdrawal of Developer's petitions; however, it denied the existence of a settlement agreement. C.R., Item Nos. 54-55.

Subsequently, on December 13, 2017, Developer filed a "Petition to Transfer Proceeding to [trial court] or, In the Alternative, to Enforce Settlement Agreement"

---

[4] Developer's separate Petition for Declaratory Order, also filed on September 7, 2017, and which sought the same relief as that set forth in Developer's Emergency Petition, was consolidated with PAWC's Amended Petition. ALJ Decision at 1.

[5] Essentially, Developer sought the same relief in two separate actions it filed on its own and in new matter it filed to PAWC's declaratory action.

5

(Transfer Petition).[6] C.R., Item No. 53, R.R. at 33a. Developer averred that "[l]ate in the day on December 7, [2017]," PAWC's counsel notified Developer it had an issue with the terms of the draft settlement agreement and that "[PAWC] was therefore reneging on the terms of the agreed upon settlement." R.R. at 37a. Accordingly, Developer sought a transfer of the proceedings to the trial court for purposes of enforcing the alleged settlement agreement. *Id.* Alternatively, Developer requested the ALJ issue an order to enforce the alleged settlement agreement. *Id.* PAWC opposed Developer's Transfer Petition and once again denied the existence of a settlement agreement. ALJ Decision at 8.

The ALJ denied Developer's Transfer Petition on April 30, 2018. C.R., Item No. 35. On May 30, 2018, Developer appealed that decision to this Court, which quashed the appeal on the basis that the ALJ's April 30, 2018 order was interlocutory.[7] ALJ Decision at 12-13.

Following a December 6, 2018 status conference with the ALJ at which the parties acknowledged that settlement was unlikely, the ALJ scheduled an evidentiary hearing for March 19, 2019. C.R., Item No. 26; ALJ Decision at 13-14. Approximately two weeks before the March 19, 2019 evidentiary hearing, Developer filed motions seeking to dismiss PAWC's Amended Petition and to stay

---

[6] According to Developer, the settlement agreement provided that PAWC would "immediately re-install" eight water meters previously removed from the Development and would install the remaining water meters needed for Phase II of the Development. R.R. at 34a. In return, both parties would withdraw all respective claims and filings pending before the trial court and the PUC. *Id.* Developer would obtain from its builder, Ryan Homes, a letter acknowledging that some lots in the Development might have low water pressure and those lots would remain unoccupied until the Township issued certificates of occupancy. *Id.* at 34a-35a. Further, "Zokaites would provide an indemnification to PAWC." *Id.* at 35a.

[7] *See Fox Ridge Village, LP v. Pub. Util. Comm'n* (Pa. Cmwlth., No. 733 C.D. 2018, filed Oct. 15, 2018).

the proceedings. C.R., Item Nos. 22-23. The ALJ denied these motions on March 15, 2019. *Id.*, Item No. 18. On March 18, 2019, Developer sought a continuance of the March 19, 2019 hearing due to the unavailability of a witness.[8] *Id.*, Item No. 17. The ALJ notified the parties that she would not continue the hearing, but Developer's witness could testify via telephone. ALJ Decision at 16.

Developer's counsel appeared at the March 19, 2019 hearing and lodged an objection to the hearing taking place. *Id.* Thereafter, Developer's counsel left the hearing room. *Id.* Developer did not move to admit any written testimony or exhibits into the record, and it did not cross-examine any of PAWC's witnesses. *Id.* PAWC presented the written testimony of its two witnesses, who were made available to answer any questions from the ALJ. *Id.* On May 9, 2019, the ALJ closed the hearing record, which consisted of the written testimony submitted by PAWC, with exhibits, and the March 19, 2019 hearing transcript. *Id.* at 17.

The ALJ issued her initial decision on July 30, 2019. C.R., Item No. 6. Citing Section 7536 of the Declaratory Judgments Act (Act), 42 Pa.C.S. § 7536, the ALJ noted that declaratory relief is appropriate where the judgment or decree will terminate the controversy or remove uncertainty. ALJ Decision at 27. Further, Section 331(f) of the Code provides that the PUC, "in its sound discretion, may issue a declaratory order to terminate a controversy or remove uncertainty." 66 Pa.C.S. § 331(f).

The ALJ characterized the ultimate issue as "whether PAWC acted reasonably when it refused to provide water service to homes located above 1,220 feet in Phase II of the Development until after [Developer] installed a booster pump station and a

---

[8] On the date of the March 19, 2019 hearing, Developer filed a Motion to Strike its continuance request because its witness was available after all. ALJ Decision at 16-17. The ALJ denied the Motion to Strike. *Id.* at 17.

7

diesel generator." ALJ Decision at 32. Therefore, PAWC had to show that its actions complied with the Code, the applicable PUC and municipal regulations, and PAWC's tariff. *Id.* More specifically, PAWC had to demonstrate it correctly regarded the Development's water facilities as incapable of providing satisfactory service without the installation of additional equipment. *Id.* at 33.

To that end, the ALJ found that tests of the water facilities performed by the parties and the Township Fire Department on October 19, 2017, demonstrated that the Development had insufficient water pressure and water flow to supply the needs of future residents of homes located above 1,220 feet. *Id.* at 37.

As to the applicable statutory and regulatory provisions which supported PAWC's position, the ALJ noted that Section 1501 of the Code relevantly provides that "[e]very public utility **shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities** . . . ." 66 Pa.C.S. § 1501 (emphasis added). Section 65.6(a) of the PUC's Regulations requires that a public water utility maintain normal operating pressures of not less than 25 psi. 52 Pa. Code § 65.6(a). Per Section 65.15(a) of the PUC Regulations, a public water utility may decline service to an applicant, such as Developer, until "the applicant has complied with Commonwealth and municipal regulations governing water service **and the approved rules and regulations of the utility**." 52 Pa. Code § 65.15(a) (emphasis added). A public water utility may also decline to serve an applicant under Section 65.15(c) of the PUC's Regulations if "installation of the piping to the applicant is reasonably regarded as hazardous or of a character that satisfactory service cannot be given." 52 Pa. Code § 65.15(c). Moreover, PAWC's tariff granted PAWC the exclusive right to determine the type and size of the mains to be installed and the facilities required to render adequate service. ALJ Decision at 30. The tariff further

8

provided that Developer was required to install water mains, services lines, hydrants, and appurtenances through a PAWC-approved vendor and to pay all associated costs. *Id.*

The ALJ noted that the Agreement between PAWC and Developer provided that a booster pump station would be needed for homes in the Development located above 1,220 feet in altitude. ALJ Decision at 35. The Township determined that a generator was also necessary to keep the booster pump station operating in the event of a power outage. *Id.* Developer sought on multiple occasions to alter the Agreement and provide different or less equipment than agreed upon by the parties. *Id.* Once Developer installed equipment which met the requirements of the Agreement, PAWC initiated water service to the Development. *Id.* at 36.

In light of the above evidence and legal authority, the ALJ concluded that PAWC complied with the Code, the PUC's, and its own tariff when it refused to accept facilities constructed by or on behalf of Developer, and refused to provide water service, due to low water pressure and insufficient water flow. *Id.* at 41.

The ALJ also addressed Developer's argument that the issue was moot, given that the required equipment had been installed and accepted by PAWC, and water service had commenced in Phase II of the Development in early 2018. The ALJ concluded that a controversy remained open long after PAWC began providing water service to Phase II of the Development, in large part due to the litigious actions of Developer, which included a May 30, 2018 appeal to Commonwealth Court following the ALJ's denial of Developer's Transfer Petition. *Id.* at 38-39. Despite its assertion that no controversy remained once water service began, Developer agreed at the December 6, 2018 status hearing that settlement was unlikely to take place, and Developer engaged in active litigation up until the date of the March 19,

9

2019 evidentiary hearing. *Id.* at 34. The ALJ found that Developer's behavior demonstrated a "high level of uncertainty over whether [it] would attempt to revive the discontinued action before the [trial court]." *Id.*

Accordingly, the ALJ granted PAWC's Amended Petition and entered an order declaring that PAWC complied with the relevant legal authority when it refused to accept water facilities constructed, or anticipated to be constructed, by Developer and to provide the Development with water service. *Id.* at 42.

Developer filed exceptions to the ALJ's Initial Decision on August 6, 2019, asserting that the ALJ should not have proceeded with an evidentiary hearing due to the existence of an oral settlement agreement between the parties. C.R., Item No. 5. Developer also maintained that declaratory relief was not appropriate, as no case or controversy remained. *Id.* Developer requested the PUC grant its exceptions and enter an order reversing the ALJ's initial decision, dismissing the matter with prejudice, and remitting the case to the trial court. *Id.*

The PUC found no error in the ALJ's April 30, 2018 denial of Developer's Transfer Petition, as it was evident that the parties disputed the existence of a settlement agreement. R.R. at 141a. While Developer had the opportunity to present evidence at the March 19, 2019 evidentiary hearing, Developer instead directed its counsel to leave the hearing without submitting any evidence in favor of its claim that a settlement agreement had been made. *Id.* at 143a. The PUC similarly found no error in the ALJ's order granting declaratory relief. *Id.* Developer's exceptions alone suggested that a controversy remained, given that Developer sought to have the matter remitted to the trial court, which would only serve to continue litigation in that forum. *Id.* at 145a. As Developer's exceptions did not address or challenge

10

the merits of the ALJ's declaratory ruling, the PUC denied Developer's exceptions and adopted the ALJ's initial decision. *Id.* at 146a.

## II. Issues

On appeal,[9] Developer argues that the ALJ and PUC erred in holding that the alleged oral settlement agreement with PAWC was unenforceable. Developer further argues that the PUC lacked jurisdiction to render a decision in this matter because PAWC is now providing the Development with water service. As such, no case or controversy remains, and the matter is moot.

## III. Discussion

## A. Oral Settlement Agreement

First, we address whether the ALJ and PUC should have enforced an oral settlement agreement Developer alleges existed with PAWC. In the alternative, Developer argues that the Commission should have directed the ALJ to hold an evidentiary hearing on the issue of whether a settlement agreement had been reached by the parties.

---

[9] Our review of an order from the PUC is limited to determining whether a constitutional violation, an error of law, or a violation of procedure has occurred and whether the necessary findings of fact are supported by substantial evidence. *Chester Water Auth. v. Pa. Pub. Util. Comm'n*, 868 A.2d 384, 389 n.9 (Pa. 2005).

Our scope of review with respect to declaratory orders of the PUC is more limited. *Germantown Cab Co. v. Pa. Pub. Util. Comm'n*, 97 A.3d 410, 414 n.7 (Pa. Cmwlth. 2014). As noted by the ALJ, the PUC's authority to issue a declaratory order is found in Section 331(f) of the Code, which authorizes the issuance of such an order in the "sound discretion" of the PUC. 66 Pa.C.S. § 331(f). The scope of review in cases involving discretionary acts of an agency is limited to determining whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's functions or duties. *Germantown Cab Co.*, 97 A.3d at 414 n.7. The fact that the reviewing court may have a different opinion is not sufficient to interfere with an agency's action. *Id.*

11

The enforceability of a settlement agreement is determined according to principles of contract law. *Mazzella v. Koken*, 739 A.2d 531, 536 (Pa. 1999). To be enforceable, a settlement agreement must possess all the elements of a valid contract – offer, acceptance, and consideration. *Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick*, 587 A.2d 1346, 1349 (Pa. 1991). "[I]t is essential to the enforceability of a settlement agreement that 'the minds of the parties should meet upon all the terms, as well as the subject matter, of the agreement.'" *Mazzella*, 739 A.2d at 536 (internal citations omitted).

An oral settlement agreement is enforceable, and an agreement presented to the presiding judge is valid and binding, despite the absence of any writing or formality. *DeLuca v. Mountaintop Area Joint Sanitary Auth.*, 234 A.3d 886, 899 (Pa. Cmwlth. 2020). However, enforcement of an oral settlement agreement requires more than one party's assertion that a settlement was reached. In *DeLuca*, we noted that a settlement agreement is enforceable where the parties report to the trial court that they reached an agreement, the terms of the agreement were placed on the record, and each party confirmed its understanding of the agreement. *DeLuca*, 234 A.3d at 900. While the settlement agreement in *DeLuca* had not been reduced to writing, this Court held it was nonetheless enforceable because the appellant confirmed her understanding of the settlement terms, which had been placed on the record before the trial judge. *Id.* at 901.

Instantly, while the ALJ recognized that settlements were encouraged per Sections 5.231 and 5.232 of the PUC's regulations, neither regulation empowered the PUC to enforce an oral settlement agreement. Developer argues this constitutes error by the ALJ, and, consequently, the PUC, as such agreements are clearly enforceable.

12

Developer maintains that the parties fully agreed to the terms of a settlement agreement on December 1, 2017, and the terms of this agreement were memorialized in a written document executed by Zokaites individually, and on behalf of Developer, on December 6, 2017. Developer cites various actions it took thereafter, such as filing Withdrawal Petitions with the PUC and notifying its builder, Ryan Homes, that an agreement had been reached, as evidence of an enforceable settlement agreement.

We cannot agree with Developer's position. Nothing in the record suggests the parties notified the ALJ they had settled their dispute and placed the terms of an agreement on the record. Developer's assertion that an enforceable settlement agreement arose on December 1, 2017, is belied by a December 5, 2017 email exchange between counsel, which Developer attached to its Transfer Petition. In the last email of this exchange, dated December 5, 2017, at 4:09 p.m., PAWC's counsel requests that Developer's counsel advise whether PAWC's revised version of the settlement agreement "is acceptable and then we can move forward with execution." R.R. at 62a. The record does not indicate whether the subsequent draft agreement executed by Developer was presented to PAWC for approval. In point of fact, Developer acknowledges that PAWC's counsel advised on December 7, 2017, that an issue remained with regard to the terms of settlement. PAWC has maintained in every filing pertinent to this issue that no settlement agreement was reached. The Withdrawal Petitions cited by Developer represent, at best, evidence of Developer's subjective belief that a settlement had been reached.

Moreover, we observe no error in the ALJ's failure to hold an evidentiary hearing on this issue. Developer filed its Transfer Petition on December 13, 2017. The parties agreed during a December 6, 2018 status hearing with the ALJ that

13

settlement was unlikely to occur. As of the March 19, 2019 hearing date, an issue clearly remained as to the existence of an enforceable settlement agreement between the parties. Despite this, rather than present evidence in support of the alleged settlement agreement, and the multitude of petitions and motions filed by Developer throughout the course of this litigation, Developer's counsel simply lodged an objection to the evidentiary hearing and left. Developer makes no cogent argument as to why it should be granted a second opportunity to present evidence when it declined to do so at the first.[10]

## B. Declaratory Relief

Next, we address whether the PUC erred in granting PAWC's Amended Petition, as PAWC accepted the Development's water facilities and began providing water service to the Development in March 2018. The PUC's authority to grant declaratory relief is not in question, nor are the findings of fact made by the ALJ and adopted by the PUC in its August 6, 2020 Opinion and Order.

To sustain an action for declaratory judgment, a party must demonstrate the existence of a real or actual controversy. *Funk v. Wolf*, 144 A.3d 228, 251 (Pa. Cmwlth. 2016), *aff'd*, 158 A.3d 642 (Pa. 2017). There can only be a case and controversy where there are antagonistic claims that indicate imminent and inevitable litigation. *Ruszin v. Dep't of Labor & Indus., Bureau of Workers' Comp.*, 675 A.2d 366, 371 (Pa. Cmwlth. 1996).

Developer argues that the controversy in this matter first arose when it filed a complaint seeking declaratory relief with the trial court. The basis for Developer's trial court complaint was PAWC's refusal to accept the Development's water

---

[10] In the absence of any evidence demonstrating the existence of a settlement agreement, written or oral, we need not address whether an oral settlement agreement is enforceable pursuant to Sections 5.231 and 5.232 of the PUC's regulations.

facilities. Because PAWC accepted the water facilities and has provided water service to the Development since March 2018, Developer maintains that no case or controversy exists. Accordingly, declaratory relief is no longer appropriate.

Both the ALJ and the PUC relied heavily on the litigious behavior of Developer in concluding that a case and controversy remained in this matter. We agree that Developer's actions in the months that followed PAWC's acceptance of the Development's water facilities in March 2018 suggest the existence of continued uncertainty and controversy. On May 30, 2018, despite the fact that water service had commenced, Developer filed an appeal with this Court challenging the ALJ's denial of its request to either transfer the matter to the trial court or to enforce the alleged settlement agreement. Approximately seven months later, at the December 6, 2018 status hearing, Developer acknowledged that settlement was unlikely. The ALJ scheduled an evidentiary hearing for March 19, 2019. Developer filed a Motion to Dismiss PAWC's Amended Petition on March 3, 2019, then sought to continue the proceedings on March 18, 2019, due to the alleged unavailability of a witness. As the PUC pointed out in its order and opinion, Developer's appeal sought to have this matter remitted to the trial court. It is difficult to credit Developer's argument that no controversy remains when Developer seeks further redress from the trial court.

Indeed, in its principal brief filed with this Court, Developer continues to challenge the necessity of the additional equipment required by PAWC. In its recitation of the facts, Developer notes that PAWC "insisted in putting a demand for the installation of a pump station in the Agreement[,]" to which Developer "had no choice but to agree[.]" Developer's Br. at 15. Developer alleges that, due to PAWC's refusal to install water meters in the Phase II homes, some customers under

15

agreement to purchase the homes were "effectively homeless," as they were unable to move into the Development but had already sold their existing homes. *Id.* at 17-18. Developer further asserts that "[w]hen it became apparent that PAWC would not cooperate in any way to place these home buyers into their new homes by providing water service, it had no recourse but to initiate a proceeding in the [trial court]." *Id.* at 18. Such language clearly lends itself to a conclusion that, even with a declaratory order having been issued by the PUC, a controversy remained with regard to the legitimacy of PAWC's actions in this matter. Incredibly, while maintaining that no controversy exists, Developer asks this Court to remand these proceedings to the PUC for an evidentiary hearing on the existence of an enforceable settlement agreement.

Moreover, we note that the issue which formed the basis for the ALJ's decision was not whether PAWC had provided water to the Development. Rather, **the issue was whether PAWC's initial refusal to do so was proper and complied with the applicable statutory and regulatory requirements**.

Based on the foregoing discussion, we discern no error by the ALJ and the PUC in their conclusions that a case or controversy remained in this matter. The entry of a declaratory order by the PUC is within the PUC's sound discretion, per Section 331(f) of the Code. As Developer has not asserted an abuse of discretion on the part of the PUC, we affirm its order granting PAWC's Amended Petition.

_____
ELLEN CEISLER, Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fox Ridge Village, LP,                     :
                  Petitioner    :
                             :
      v.                     :   No. 854 C.D. 2020
                             :
Public Utility Commission,                 :
                Respondent    :

# **O R D E R**

AND NOW, this 9th day of June, 2021, the August 6, 2020 order of the Pennsylvania Public Utility Commission is hereby AFFIRMED.

                                  _____

                                  ELLEN CEISLER, Judge