**RONALD CAB, INC., t/a Community Cab and Dee Dee Cab, Inc., t/a Penn–Del Cab and Shawn Cab, Inc., t/d/b/a Delaware County Cab Co. and Sawink, Inc., t/d/b/a County Cab Co., Petitioners**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 2012.
Decided July 12, 2013.

---

Michael S. Henry, Philadelphia, for petitioners.

John E. Herzog, Assistant Counsel, Harrisburg, for respondent.

BEFORE: LEAVITT, Judge, McCULLOUGH, Judge, and COLINS, Senior Judge.

OPINION BY Judge LEAVITT.

Ronald Cab, Inc. t/a Community Cab; Dee Dee Cab, Inc. t/a Penn–Del Cab; Shawn Cab., Inc. t/d/b/a Delaware County Cab Co.; and Sawink, Inc. t/d/b/a County Cab Co. (collectively, the Taxicab Companies) petition for review of an adjudication of the Pennsylvania Public Utility Commission (Commission) dismissing their complaint that a competing company, OGED, Inc., was offering taxicab service without a certificate of public convenience from the Commission. The central question in this appeal is whether medallion taxicabs that operated in Philadelphia and outside Philadelphia under a single certificate of public convenience were permitted to transfer, effectively, the non-Philadelphia service to a non-medallion taxicab without the Commission's approval. Because the Commission made no findings or conclusions of law on this issue, we remand for a new adjudication.

The Commission has regulated taxicab service throughout Pennsylvania since 1913. Regulation begins with a certificate of public convenience, for which the applicant must demonstrate that there is a need.

Central to the Commission's regulation of public utilities is a certificate of public convenience, which every utility must acquire before it can operate lawfully. *See* 66 Pa.C.S. § 1101 (public utility may supply service where a certificate of public convenience is "first had and obtained."). The Commission will grant a certificate of public convenience where "necessary or proper for the service, accommodation, convenience, or safety of the public." 66 Pa.C.S. § 1103(a).[1] The Commission must hold public hearings on a certificate appli-

---

1. Section 1103(a) states as follows:

(a) General rule.—Every application for a

cation. 66 Pa.C.S. § 1103(b).[2] The Commission's regulation at 52 Pa.Code § 3.381(b) requires that notice of an application for a certificate must be published in the Pennsylvania Bulletin.[3] Persons objecting to approval of the application are then permitted to file protests with the Commission and can participate in the proceedings as intervenors. 52 Pa.Code § 3.381(c).[4]

Beginning in 1990, taxicab companies offering service in Philadelphia had to obtain a medallion from the Commission in addition to a certificate of public convenience.[5] The Act of April 4, 1990, P.L. 93, added Chapter 24 to the Public Utility Code, 66 Pa.C.S. §§ 2401–2416, which chapter became known as the Medallion Act. The act required that each taxicab with a certificate of public convenience from the Commission whose service area covered the entire City of Philadelphia had also to

obtain a medallion from the Commission. 66 Pa.C.S. § 2402 (repealed). The taxicab could not provide service in Philadelphia unless the medallion was attached to its hood at all times. 66 Pa.C.S. § 2404 (repealed).

In 2004, the General Assembly transferred the responsibility for regulating taxicab service in Philadelphia from the Commission to the Philadelphia Parking Authority in the Act of July 16, 2004, P.L. 758, No. 94 (Act 94). Act 94 repealed the Medallion Act and replaced it with Chapter 57 of the General Local Government Code, 53 Pa.C.S. §§ 5701–5745. Outside Philadelphia, the Commission remains solely responsible for regulating taxicab service. As did the Medallion Act, Chapter 57 requires each taxicab with citywide rights to have a certificate of public convenience and a medallion attached to the vehicle.[6]

2. Section 1103(b) states as follows:
certificate of public convenience shall be made to the commission in writing, be verified by oath or affirmation, and be in such form, and contain such information, as the commission may require by its regulations. A certificate of public convenience shall be granted by order of the commission, only if the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public. The commission, in granting such certificate, may impose such conditions as it may deem to be just and reasonable. In every case, the commission shall make a finding or determination in writing, stating whether or not its approval is granted. Any holder of a certificate of public convenience, exercising the authority conferred by such certificate, shall be deemed to have waived any and all objections to the terms and conditions of such certificate.
66 Pa.C.S. § 1103(a).

2. Section 1103(b) states as follows:
(b) Investigations and hearings.—For the purpose of enabling the commission to make such finding or determination, it shall hold such hearings, which shall be public, and, before or after hearing, it may make

such inquiries, physical examinations, valuations, and investigations, and may require such plans, specifications, and estimates of cost, as it may deem necessary or proper in enabling it to reach a finding or determination.
66 Pa.C.S. § 1103(b).

3. The regulation states:
Applications will be docketed by the Secretary and, with the exception of motor common carrier property applications, thereafter forwarded for publication in the *Pennsylvania Bulletin*.
52 Pa.Code § 3.381(b).

4. The regulation states:
Upon the filing of a timely protest, the protestant will be allowed to participate in the proceeding as a party intervenor.
52 Pa.Code § 3.381(c)(1)(i)(B).

5. A "medallion taxicab" is authorized to "provide citywide taxicab service." 52 Pa. Code § 1011.2.

6. Specifically, Section 5714(a) states, in relevant part, that

The Taxicab Companies hold certificates of public convenience from the Commission with a service area outside Philadelphia. That includes the 69th Street Station in Upper Darby, Delaware County. This station is a transportation hub for various train lines and bus routes that serve the region. Persons coming into the station use taxis to reach their final destinations. The Taxicab Companies assert that OGED is providing service at the 69th Street Station without the requisite authority.

Prior to the passage of Act 94, OGED held four certificates of public convenience and four medallions issued by the Commission.[7] These authorized OGED to provide call or demand service on a citywide basis in Philadelphia. One certificate also authorized OGED to provide call or demand service in a small area outside Philadelphia that included the 69th Street Station.

Since Act 94, OGED and the Taxicab Companies have continued to operate in the service areas they held under the certificates of public convenience issued by the Commission. However, OGED changed the way it operates outside Philadelphia. OGED now operates taxicabs (1) with medallions in Philadelphia and (2) without medallions outside Philadelphia.

In January 2010, the Taxicab Companies filed a complaint with the Commission alleging that OGED was operating illegally. The complaint asserted that OGED had abandoned its service area at the 69th Street Station; was operating without any authorization; and was not reporting its operations and revenue to the Commission.

The Taxicab Companies requested the Commission to issue a cease and desist order to OGED. OGED denied the allegations in the complaint.

The matter was assigned to an administrative law judge (ALJ) for a hearing. In support of their complaint, the Taxicab Companies presented the testimony of Ronald Winkelvoss, Jr., owner and officer of the Taxicab Companies. Winkelvoss explained that the Taxicab Companies operate under certificates of public convenience issued by the Commission prior to the passage of Act 94. Act 94 did not affect their certificates. Winkelvoss then testified that OGED is a taxicab company that operates in Philadelphia, and all of its taxicabs must have medallions. Some of the 1600 authorized medallion taxicabs also provide service outside Philadelphia, including the 69th Street Station. However, these taxicabs could not operate anywhere, even outside Philadelphia, without a medallion.

Winkelvoss described the 69th Street Station as a transportation hub that is crucial to the Taxicab Companies' business. The only companies authorized to provide service at the 69th Street Station are the Taxicab Companies and those medallion taxicabs that always had that service area. Winkelvoss testified that since late 2009 he has seen OGED operating three or four taxicabs without medallions at the 69th Street Station. He believes this is illegal.

Winkelvoss testified that OGED's 2007 Commission tariff specified that OGED was limited to operating one vehicle.[8]

---

[a] vehicle may not be operated as a taxicab with citywide call or demand rights in cities of the first class unless a certificate of public convenience is issued by the authority authorizing the operation of the taxicab and a medallion is attached to the hood of the vehicle.

53 Pa.C.S. § 5714(a)(1).

7. Apparently, OGED owned additional medallions at one point but transferred them to new owners.

8. The Commission's regulations define a tariff as follows:

Schedules of rates, rules, regulations, practices or contracts involving any rate, includ-

OGED's 2009 tariff removed that one-vehicle restriction. Winkelvoss explained that a notice of a taxicab company's application to change its operations must be published in the Pennsylvania Bulletin, but none appeared for OGED. If it had, he would have protested. Winkelvoss testified that there can be only one vehicle per medallion, but OGED effectively took "a medallion here and [bifurcated] it into as many pieces" as desired. Reproduced Record at 48 (R.R. ____). In other words, OGED acted as though Act 94 effected a change in its operations and service area that did not require Commission approval.

The Taxicab Companies next presented the testimony of Joseph Marino, an owner and officer of OGED, who testified, as on cross-examination. He testified that before Act 94, OGED operated four taxicabs, each with a separate medallion and a separate certificate of public convenience issued by the Commission. All four of the Commission's certificates authorized OGED to operate taxicabs in Philadelphia, and one certificate authorized OGED to operate outside of Philadelphia. Marino understood that each certificate of public convenience was limited to the operation of one vehicle.

According to Marino, Act 94 left OGED with a Philadelphia service area and a non-Philadelphia service area. The Parking Authority took over supervision of OGED's four medallion taxicabs and issued replacement certificates. OGED did not request the Commission to issue it a separate certificate of public convenience to operate one, or more, taxicabs at the 69th Street Station. Marino believed the pre-Act 94 certificate provided this authority.

Marino acknowledged that the 2007 tariff limited OGED to the use of one vehicle, but he denied ever having filed that tariff. Marino acknowledged that he filed OGED's 2009 tariff with the Commission. He explained that he removed the reference to Philadelphia because the Commission no longer regulated Philadelphia operations.

Marino testified that OGED currently operates four taxicabs at the 69th Street Station, and they do not have medallions. Marino believes that OGED is authorized to operate an unlimited number of non-medallion taxicabs outside Philadelphia. OGED pays assessments on the non-medallion taxicabs to the Commission, and its taxicabs are inspected by Commission personnel.

The ALJ found that the Taxicab Companies' evidence did not prove that OGED had abandoned its service area outside Philadelphia; had failed to report revenues to the Commission; or had transferred its operating rights to another company. However, the ALJ observed that the Taxicab Companies had raised other issues at the hearing, namely, that OGED operated outside Philadelphia (1) without authority and (2) in violation of the one-vehicle restriction. OGED did not object to the addition of these issues. The ALJ held that OGED had improperly removed its one-vehicle restriction without following the procedures required for amending a certificate of public convenience. Accordingly, the ALJ reinstated the previous one-vehicle restriction. Nevertheless, the ALJ found the record inadequate to prove that OGED was operating in the same service area for which the Taxicab Companies are licensed.

ing contracts for interchange of service and, in the case of a common carrier, other than a common carrier of property in the transportation of property, schedules show-

ing the method of distribution of the facilities of the common carrier.

52 Pa.Code § 23.1.

The Taxicab Companies and OGED filed exceptions to the ALJ's recommended adjudication. The Taxicab Companies argued, *inter alia*, that Act 94 left the Commission without authority to regulate medallion taxicabs, even when they operate outside Philadelphia. The Taxicab Companies also argued that OGED violated its certificate of public convenience by operating taxicabs without a medallion at the 69th Street Station. In its exceptions, OGED argued that the ALJ erred in holding that it had expanded its license authority improperly.

The Commission adopted the ALJ's findings of fact. It denied the exceptions of the Taxicab Companies and sustained those of OGED.

With respect to the Taxicab Companies' exceptions, the Commission found them "not entirely clear." Adjudication at 11. It held that the Commission and Philadelphia Parking Authority were indispensable parties and, thus, could not rule on the Taxicab Companies' claims that OGED had acted improperly. *Id.* The Commission agreed with the ALJ that the Taxicab Companies had not proved the allegations in their complaint and had failed to prove that OGED had violated its tariff. With respect to OGED's exceptions, the Commission held that the ALJ erred in holding that OGED violated the Public Utility Code by dropping the one-vehicle restriction, observing that the statutory procedures cited by the ALJ did not apply to tariffs.

The Commission dismissed the Taxicab Companies' complaint, which had the practical effect of allowing OGED to continue to operate an unlimited number of taxicabs in a service area with no connection to Philadelphia. The Taxicab Companies then petitioned for this Court's review.[9]

On appeal, the Taxicab Companies raise two issues. First, they argue that the Commission does not regulate medallion taxicabs that hold certificates of public convenience that include an extra-Philadelphia service area. Stated otherwise, the Commission cannot authorize medallion taxicabs to operate outside Philadelphia without medallions. To operate any non-medallion taxicabs, OGED had first to obtain a certificate of public convenience from the Commission, and it did not do so. Second, they argue that the record proved that OGED is offering call or demand service outside Philadelphia without a certificate of public convenience issued by the Commission.

The Commission responds that it dismissed the complaint because the Taxicab Companies did not prove the specific allegations contained therein. The Commission acknowledges that the Taxicab Companies raised additional issues at the hearing, but asserts that the Commission properly refused to rule on those because they were "confusing." Commission's Brief at 5. Further, neither the Commission nor the Philadelphia Parking Authority had notice of those claims. *Id.*

The Taxicab Companies explain that their appeal does not concern the Commission's adoption of the ALJ's proposed adjudication on the specific allegations in the complaint. Their appeal concerns only those new issues raised at the hearing, and they were permitted to raise additional issues under a Commission regulation. The regulation states as follows:

9. Our review of an order of the Commission is limited to determining whether necessary findings of fact are supported by substantial evidence, an error of law or procedure occurred or constitutional rights were violated. *PECO Energy Company v. Pennsylvania Public Utility Commission*, 568 Pa. 39, 46, 791 A.2d 1155, 1160 (2002).

(a) Amendment by consent. When the parties introduce issues at a hearing not raised by the pleadings whether by express or implied consent of the parties, *the issues shall be treated in all respects as if they had been raised in the pleadings.*

52 Pa.Code § 5.92(a) (emphasis added).

At the hearing, the Taxicab Companies presented extensive testimony about OGED's operations, both before and after the passage of Act 94. The Taxicab Companies explicitly challenged the legality of OGED's taxicabs providing service outside Philadelphia without a medallion. Not only did OGED not object to this issue, it presented a defense. In short, the issue has been properly raised and preserved.

Because the Commission did not decide all issues raised below, a remand is necessary. Inasmuch as the Commission has expressed confusion about the Taxicab Companies' arguments, we identify the issues to be decided on remand.

The Taxicab Companies assert that OGED lacks authority to provide service outside Philadelphia on a stand-alone basis under a certificate of public convenience issued by the Commission before Act 94. They claim that OGED's medallion taxicabs may provide this service only when it is ancillary to their Philadelphia service. The Taxicab Companies contend that OGED's pre-Act 94 medallion taxicabs did not divide like an amoeba into two companies: a medallion company offering service exclusively in Philadelphia and a second, non-medallion company offering service exclusively outside Philadelphia. They argue that the Commission granted the medallion taxicabs a single service area that consisted of Philadelphia and an adjacent area. The policy considerations are quite different when those two service areas are split apart. The Commission never found that there was a need for additional non-medallion taxicabs at the 69th Street Station. Rather, it found that there was a need for some medallion cabs, the number of which is uncertain, to be able to take Philadelphia passengers to the 69th Street Station and vice versa.

Marino testified that prior to Act 94, OGED was authorized by the Commission to operate four taxicabs, each with a medallion affixed to the vehicle and each with its own separate certificate of public convenience. According to Marino, OGED has continued to operate its four medallion taxicabs in Philadelphia subject to the Parking Authority's jurisdiction. In addition, OGED operates four additional taxicabs, without medallions, at the 69th Street Station. Marino did not file an application with the Commission to operate these non-medallion taxicabs at the 69th Street Station because he believed that OGED's prior Commission-issued certificates of public convenience gave him the right to do what he did.

On remand, the Commission must determine whether OGED has the requisite authority to operate taxicabs exclusively at the 69th Street Station. Neither the Commission nor the Parking Authority are indispensable parties to this determination.

The essential question, then, is what effect Act 94 had on OGED's ability to provide call or demand service both within Philadelphia and outside Philadelphia. The Commission must determine whether Act 94, in fact, bifurcated OGED's original Commission-issued certificate of public convenience into two certificates, one issued by the Commission and one by the Parking Authority. It must determine whether, post-Act 94, OGED is a medallion company subject only to regulation by the Parking Authority but with the ability to have a service area that includes the 69th Street Station. The Commission must also determine whether OGED was required to

obtain Commission approval to amend its service area to delete Philadelphia.

For those reasons, the order of the Commission is vacated and the matter is remanded for a new adjudication addressing the issues raised by the Taxicab Companies, in accordance with the foregoing opinion.

### ORDER

AND NOW, this 12th day of July, 2013, the order of the Pennsylvania Public Utility Commission dated March 29, 2012, in the above captioned matter is hereby VACATED. The matter is REMANDED for a new adjudication in accordance with the foregoing opinion.

Jurisdiction relinquished.