BUCKS COUNTY SERVICES, INC., Concord Coach Limousine, Inc. t/a Concord Coach Taxi, Concord Coach USA, Inc. t/a Bennett Cab, Dee–Dee Cab, Inc. t/a Penn Del Cab, Germantown Cab Company, MCT Transportation, Inc. t/a Montco Suburban Taxi, and Rosemont Taxicab Co., Inc., Petitioners

v.

PHILADELPHIA PARKING AUTHORITY and Pennsylvania Public Utility Commission, Respondents.

Commonwealth Court of Pennsylvania.

Argued Oct. 6, 2014.

Decided Nov. 14, 2014.

---

Michael S. Henry, Philadelphia, for Petitioners.

John E. Herzog, Assistant Counsel, Harrisburg, for respondent Pennsylvania Public Utility Commission.

Dennis G. Weldon, Jr., Philadelphia, for respondent Philadelphia Parking Authority.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, and P. KEVIN BROBSON, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge BROBSON.

Presently before the Court for disposition are cross-applications for summary relief with respect to Count III of the Amended Petition for Review (Amended Petition) in this Court's original jurisdiction. Petitioners are Bucks County Services, Inc., Concord Coach Limousine, Inc. t/a Concord Coach Taxi, Concord Coach USA, Inc. t/a Bennett Cab, Dee–Dee Cab, Inc. t/a Penn Del Cab, Germantown Cab Company (GCC), MCT Transportation, Inc. t/a Montco Suburban Taxi, and Rosemont Taxicab Co., Inc. (collectively, Companies), all of which are suburban taxicab operators with "partial rights," originally conferred by Respondent the Public Utility Commission (PUC), to provide limited ser-

vice within specific, defined territories in the City of Philadelphia (City). In Count III, Companies challenge the authority of Respondent the Philadelphia Parking Authority (Authority) to regulate their operations within the City. For the reasons that follow, we grant Respondents' application for summary relief and deny Companies' application.

A detailed account of the parties, their relationships, and the evolving regulation of taxicabs within the City is set forth in our prior decision in this matter, disposing of preliminary objections to the Amended Petition and thus will not be repeated here. *See Bucks Cnty. Servs., Inc. v. Phila. Parking Auth.,* 71 A.3d 379 (Pa. Cmwlth.2013) *(Bucks Cnty. Servs. I ).* At this stage in the proceeding, we address Companies' contention that the Authority lacks the power to regulate their operations within the City under an amendment to the Parking Authorities Law (Law), commonly known as Act 94.[1] We have observed:

> Under Act 94, the regulation of taxicabs and limousines in the City changed from the [PUC] to the Philadelphia Parking Authority (Authority), whose power extends to persons or corporations providing these services between points in the City, from any point in the City to any point in the Commonwealth or outside, and from any point in the Commonwealth to any point in the City if the request for service is by call to a centralized dispatch system. The [PUC] retained jurisdiction over service outside the City of Philadelphia.

*Germantown Cab Co. v. Pub. Util. Comm'n,* 97 A.3d 410, 411–12 (Pa.Cmwlth. 2014) (citation omitted) *(Germantown/PUC ).*

■ In Count III of the Amended Petition, Companies aver factual *and legal* matters, which we summarize in pertinent part as follows:

(1) Taxi Companies are all suburban common carriers that hold certificates of public convenience issued by the PUC, and, therefore, they are subject to regulation by the PUC [¶ 54];

(2) Taxi Companies all have PUC-determined tariffs and own vehicles that are subject to inspections by the PUC, pay annual assessments to and are subject to PUC regulation and enforcement throughout the Commonwealth, including the City [¶ 55];

(3) the PUC-issued certificates of public convenience Taxi Companies hold authorize Taxi Companies to provide limited service in the City, and only the PUC can revoke such certificates; the certificates provide for discrete territories for each of Taxi Companies, and those territories encompass their suburban territories as well as their limited territories in the City [¶ 56];

(4) the PUC has never determined that the Medallion Act or regulations arising thereunder apply to operators such as Taxi Companies and has expressly concluded that the Medallion Act did not apply to Taxi Companies when the Medallion Act was in force [¶ 57];

(5) the General Assembly did not intend to transfer regulatory powers over suburban common carriers holding PUC-issued certificates of public convenience, such as Taxi Companies, from the PUC to the Authority [¶ 59];

(6) the history of Act 94 indicates that the General Assembly did not intend to provide for dual regulatory supervision by the PUC and the Authority over

---

1. Act of December 30, 2001, P.L. 2001, reenacted and amended by the Act of July 16, 2004, P.L. 758 (Act 94), *as amended,* 53 Pa. C.S. §§ 5501–5517; 5701–5745. The Law is part of the General Local Government Code. *See* 53 Pa.C.S. § 101.

partial rights, non-medallion taxicab operators [¶ 61];

(7) such dual oversight makes operation by entities such as Taxi Companies impracticable or impossible [¶ 62]; and

(8) the cost for Taxi Companies to ensure compliance with regulations and oversight of both the PUC and the Authority would be astronomical and unreasonable. [¶ 66.]

Companies seek a judgment in Count III declaring that the Authority does not have statutory power under Act 94 to regulate suburban common carriers doing business in defined areas of the City under authority granted by the PUC. Respondents seek relief confirming the Authority's powers to regulate Companies under Act 94.[2]

■ Section 5714(d)(2) of the Law, as originally enacted through Act 94, provided: "Carriers currently authorized to provide service to designated areas within [the City] on a non-citywide basis shall retain their authorization through the [A]uthority."[3] Each of Companies had PUC authority to operate within the City of Philadelphia at the time of Act 94's passage. In an unreported decision, this Court held that Section 5714(d)(2) unambiguously transferred from the PUC to the Authority the power to regulate the in-City *service* provided by non-citywide carriers, such as Companies. *Germantown Cab Co. v. Philadelphia Parking Auth.,* 2013 WL 3944367 (Pa.Cmwlth., No. 461 C.D.2012, filed Jan. 22, 2013), slip. op. at 3–4 & n. 3 *(Germantown/PPA ), appeal denied,* 622 Pa. 753, 79 A.3d 1100 (2013). In a reported panel decision this year, this Court cited *Germantown/PPA* with approval on the question of whether Act 94 vested within the Authority the power to regulate in-City service of PUC-authorized partial rights taxicabs. *Germantown/PUC,* 97 A.3d at 417–18. In addition, as for Companies' contention that the General Assembly did not intend for dual regulation of their operations by the PUC and the Authority, we cite our decision in *Germantown/PUC:*

As our Supreme Court stated in *Blount v. Philadelphia Parking Authority,* 600 Pa. 277, 965 A.2d 226, 232 (2009), "[t]he [Authority] is responsible for the high volume Philadelphia area while the PUC is responsible for the remaining parts of the Commonwealth. 53 Pa.C.S. § 5505(d). The two agencies' spheres of operation combine and **overlap** to create a system of ground transportation that is essential to the welfare of the Com-

---

**2.** Section 7541(a) of the Declaratory Judgments Act (DJA), 42 Pa.C.S. § 7541(a), provides "relief from uncertainty" regarding "rights, status, and other legal relations." Section 7533 of the DJA, 42 Pa.C.S. § 7533, provides parties whose rights or legal status is unclear under a particular statutory provision the ability to seek a declaration regarding construction or validity of a statute. In considering a request for summary relief under Pa.R.A.P. 1532(b), this Court applies a standard similar to the one applied to motions for summary judgment. Thus, we may grant summary relief if a party's right to relief is clear as a matter of law and no material issues of fact remain to be resolved. *Jubelirer v. Rendell,* 598 Pa. 16, 953 A.2d 514, 521 (2008).

**3.** The section has since been amended and now provides:

Carriers authorized by the Authority to provide taxicab service to designated areas within cities of the first class on a non-citywide basis pursuant to section 5711(c)(2.1) (relating to power of [the Authority] to issue certificates of public convenience) shall retain their authorization in those areas of [the City] subject to the exclusive jurisdiction of the [A]uthority and orders and regulations of the [A]uthority issued under this chapter. The [A]uthority shall not grant additional rights to new or existing carriers to serve designated areas within [the City] on a non-citywide basis. 53 Pa.C.S. § 5714(d)(2); *see* Act of July 5, 2012, P.L. 1022 (Act 119).

monwealth 'as a whole.' 53 Pa.C.S. § 5701.1." (Emphasis added.)

*Id.* at 418 (emphasis in original).

Turning to Companies' contentions, we reject every argument that calls into question this Court's prior rulings confirming the Authority's regulatory reach with respect to Companies, and those similarly situated, when providing taxicab service within the City. This Court's precedent on this issue, recounted above, is now firmly established. Contrary to Companies' contention, Section 5714(d)(2) of the Law did not affect their service *rights* in the City. The transfer of regulatory power may result in the imposition on Companies of more burdensome requirements relating to the manner in which they provide service in the City, but their rights to provide service remain unchanged. Regulations on how to operate can change over time without affecting the underlying right to operate. We know of no licensing scheme in this Commonwealth that entitles a licensed entity to have its operating regulations frozen in time as of the date it is licensed. But that appears to be what Companies seek here. We choose, again, to stand by our precedent and thus reject Companies' arguments challenging the Authority's powers to regulate service in the City.

■ Companies also argue that the Law fails to provide a specific mechanism of transfer of regulatory power from the PUC to the Authority. We agree with the Authority, however, that the language in Act 94, and specifically Section 5714(d)(2) of the Law, effected the transfer by operation of law. Companies are correct that the Law, as amended by Act 94 and Act 119, provides the Authority with the power to issue certificates of public convenience for non-citywide call or demand service. 53 Pa.C.S. § 5711(c)(2.1). But that language does not demand that the Authority

issue a certificate of public convenience to those companies that had existing service rights within the City prior to Act 94's passage. Instead, this section appears to allow the Authority to issue certificates of public convenience to provide non-citywide call or demand service. Because, however, Companies had that authority prior to the passage of Act 94, they were not required to obtain, and the Authority was not required to issue, a new certificate of public convenience.

■ Concluding, as we have done before, that the Authority, by operation of law, now regulates the in-City operations of Companies and similarly-situated taxicab providers, we must consider Companies' contention that Section 5712(d)(2) of the Law is so devoid of standards that it constitutes an unconstitutional delegation of legislative authority in violation of Article II, Section 1 of the Pennsylvania Constitution, which provides that the "legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives." Companies contend that this provision of the Law fails to include necessary standards for exercising the powers and duties bestowed by the General Assembly on the Authority. Companies assert that the General Assembly failed to make necessary policy choices and unlawfully delegated to the Authority and the PUC the task of devising standards, policies, and limitations on power that would provide elemental direction for the implementation of Section 5714(d)(2) of the Law.

■ Our legal standard is as follows:

The "legislative power" in its most pristine form is the power "to make, alter and repeal laws." It is *axiomatic* that the legislature cannot constitutionally delegate the power to make law to any other branch of government or to

any other body or authority. The legislature may, consistent with this constitutional axiom, delegate authority and discretion in connection with the execution and administration of a law; it may establish primary standards and impose upon others the duty to carry out the declared legislative policy in accordance with the general provisions of the enabling legislation.

While the General Assembly may, with adequate standards and guidelines, constitutionally delegate the power and authority to execute or administer a law, the prohibition against delegation of "legislative power" requires that the *basic policy choices* be made by the General Assembly.

*Blackwell v. Commonwealth, State Ethics Comm'n,* 523 Pa. 347, 567 A.2d 630, 636–37 (1989) (citations omitted) (emphasis in original). The Pennsylvania Supreme Court has also advised: "To determine whether the General Assembly has established adequate standards, this Court must look to the language of the statute, the underlying purpose of the statute, and its reasonable effect." *Pa. State Ass'n of Jury Comm'rs v. Commonwealth,* 621 Pa. 360, 78 A.3d 1020, 1036 (2013).

█ We thus first look to the language of the Law, specifically Chapter 57, as enacted under Act 94 and as amended since by Act 119. We start with the definitions. Section 5701 of the Law defines "taxicab" as follows:

A motor vehicle designed for carrying no more than eight passengers, exclusive of the driver, on a call or demand service basis and used for the transportation of persons for compensation either on:

(1) a citywide basis as authorized by a certificate of public convenience and a corresponding medallion issued by the authority; or

(2) a non-citywide basis as authorized by a certificate of public convenience issued by the authority without a corresponding medallion.

53 Pa.C.S. § 5701. Although Companies do not have a certificate of public convenience issued by the Authority to provide service on a non-citywide basis, by virtue of the transfer language in Act 94, discussed above, they operate in the City as if they had such a certificate by virtue of their PUC authorization. Accordingly, Companies' taxicabs fall within the definition of "taxicab" under Section 5701.

This definition clearly creates two classes of taxicabs operating within the city: (1) medallion taxicabs, which operate on a citywide basis; and (2) partial-rights taxicabs, which operate on a non-citywide basis. Both classes are regulated by the Authority. The Law includes language that provides for regulation applicable to medallion (citywide) operators and non-citywide operators—*i.e.,* Companies.

For example, Section 5714(a)(1) of the Law refers to the requirement that *citywide* operators may only operate with a certificate of public convenience and a medallion attached to the hood of a citywide service vehicle. 53 Pa.C.S. § 5714(a)(1). But a medallion is not required for partial-rights taxicabs. Section 5714(a)(2) provides: "The [A]uthority shall require, by order or regulation, that *each vehicle within its jurisdiction pursuant to this chapter* submit to periodic inspections by [A]uthority personnel to ensure that the vehicle meets the requirements of this section." *Id.* § 5714(a)(2) (emphasis added). Unlike the medallion requirement in subsection (a)(1) of Section 5714, subsection (a)(2) applies to all vehicles within the Authority's jurisdiction under Chapter 57 of the Law and not just those operating on a citywide basis. Thus, the General Assembly, through this provision, has made a basic

policy choice that the Authority must provide for periodic inspections of all vehicles, not just medallion cabs. Like subsection (a)(2), subsections (a)(3) through (a)(5) extend specific regulatory powers over *all vehicles* within the Authority's jurisdiction with respect to vehicle age and mileage limitations and the display of tariff rates. Subsections (a)(6) and (a)(7), by their terms, however, only apply to medallion cabs. Also, other provisions of the Law addressing administrative regulation such as rates (*id.* § 5703), insurance (*id.* § 5704), contested complaints (*id.* § 5705), driver certification (*id.* § 5706), and budget and fees (*id.* § 5707) refer either generally to "taxicabs" or to both "taxicabs" and "medallion" vehicles. They, therefore, would also apply to Companies, which fall within the Law's definition of "taxicab".

The above provisions provide ample indicia of the General Assembly's intent to confer certain powers on the Authority with respect to the regulations of both medallion and partial-rights taxicabs. These provisions are consistent with the underlying policy of Act 94. In this regard, we note the General Assembly's legislative findings in Section 5701.1 of the Law, in which the General Assembly determined that providing the Authority with the power to regulate all taxicab service within the City would benefit the health, safety, and welfare of the City, surrounding communities, and the Commonwealth as a whole. 53 Pa.C.S. § 5701.1; *see Germantown/PUC*, 97 A.3d at 418. We see the provisions of Act 94, as amended, granting the Authority the power to regulate certain areas of Companies' operations within the City as wholly consistent with the underlying purposes of that legislation. Companies have not convinced us that compliance with the Law and any regula-

tions promulgated by the Authority pursuant thereto when operating within the City would create an undue hardship or would be unreasonable. The prospect of having to comply with competing, and perhaps even conflicting, regulatory regimes is an occupational hazard for any business enterprise that chooses to operate in more than one jurisdiction.

Based on the foregoing, Companies have failed to meet their high burden of showing that Act 94, as amended, is unconstitutional. To the contrary, we are satisfied that the General Assembly provided sufficient standards upon which the Authority could regulate Companies' operation of taxicabs within the City.

In its papers, Companies also attempt to press a challenge, raised in Count IV of their Amended Petition, to Section 22(4) of Act 94. Section 22(4), which is not included in the codified version of the Law, directed the PUC to assist the Authority with the transfer of regulatory authority over partial-rights taxicabs authorized by the PUC to provide in-City service and empowered the PUC and the Authority to resolve by mutual agreement any jurisdictional issues that may be associated with the transfer. *See* Historical and Statutory Notes to 53 Pa.C.S.A. § 5701. This section further directed the parties to submit any agreement to the General Assembly and, if the General Assembly does not reject the same, to publish the agreement in the Pennsylvania Bulletin. *Id.* In our prior opinion in this matter disposing of preliminary objections, we sustained preliminary objections to Count IV for failure to join indispensable parties. *See Bucks Cnty. Servs. I*, 71 A.3d at 388. We, therefore, will not consider Companies' challenge to Section 22(4) of the Law.[4]

---

**4.** To the extent Companies have concerns about the prospect for extra-territorial en-

forcement by the Authority of its regulations, a recent Pennsylvania Supreme Court deci-

Finally, and in the alternative, Companies contend that because a genuine issue of material fact remains over whether the Authority has issued certificates of public convenience to Companies to operate within the City, the Court may not grant summary relief in favor of Respondents. Whether the Authority has issued certificates to Companies, however, is not a genuine issue of material fact. As discussed above, the Authority was not required to issue such certificates in order to begin regulating Companies' in-City operations. The power became vested within the Authority by operation of law upon passage of Act 94. Nothing further was required.

Accordingly, in the absence of any genuine issue of material fact, there is no impediment to the Court granting Respondents' application for summary relief with respect to Count III of the Amended Petition. For the reasons set forth above, we will grant Respondents' application for summary relief and deny Companies' application.

### ORDER

AND NOW, this 14th day of November, 2014, upon consideration of the cross-motions for summary relief filed by Petitioners and Respondents, we GRANT the application filed by Respondents, requesting summary relief in the nature of a motion for partial summary judgment regarding Count III of Petitioners' Amended Petition for Review, and we DENY Petitioners' application for summary relief with respect to Count III. In so doing, we DECLARE that, pursuant to Chapter 57 of the General Local Government Code, 53 Pa.C.S.

§§ 5701–5745, the Philadelphia Parking Authority has the power to promulgate and enforce regulations relating to service provided by Petitioners within the City of Philadelphia.

---

sion provides some guidance: "[T]he potential that Philadelphia might in some instance or instances attempt extra-territorial enforcement of [the City's Fair Practices Ordinance] against SEPTA, is not truly relevant to the disposition of this declaratory judgment ac-

tion.... Any attempt at extra-jurisdictional enforcement ... will be properly dealt with if it ever arises." *See Se. Pa. Transp. Auth. v. City of Philadelphia,* — Pa. ——, 101 A.3d 79, 89–90 (2014).