# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Transportation       :
Service, Inc.,       :
           Petitioner       :
      :
      v.       :    No. 1709 C.D. 2016
      :    Argued: May 1, 2017
Pennsylvania Public Utility       :
Commission,       :
           Respondent       :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE JULIA K. HEARTHWAY, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION
BY JUDGE BROBSON                 FILED: July 3, 2017


Pennsylvania Transportation Service, Inc. (PTS) petitions for review of an order of the Pennsylvania Public Utility Commission (PUC), which granted, in part, PTS's petition for reconsideration of staff action (Petition). PTS filed the Petition in response to a PUC decision, which modified the description of operating rights in PTS's certificate of public convenience. For the reasons that follow, we affirm.

PTS is a Pennsylvania corporation engaged in the for-hire transportation (taxicab) business. On April 3, 2015, PTS purchased certain call or demand (taxi) rights issued by the PUC to Concord Limousine, Inc. t/a Concord Coach Taxi (Concord). The rights PTS purchased on April 3, 2015, were originally transferred to Concord from Boston Coach-Pennsylvania Corp. t/d/b/a Boston Coach (Boston). With regard to the taxi rights transferred from Boston to

Concord, an administrative law judge (ALJ) issued an opinion and order dated January 14, 2000, describing the transferred rights as follows:

> To transport as a common carrier by motor vehicle, persons upon call or demand: (1) in the Bala-Cynwyd Section of Lower Merion Township, Montgomery County, between the Schuylkill River on the east and Wynnewood Avenue on the west and extending to Rock Hill Road, Bryn Mawr Avenue and Montgomery Avenue on the north and from points in that area to other points in Pennsylvania, and vice versa; all transportation to be on call by telephone to the carrier's office; and (2) in that part of the City of Philadelphia, Philadelphia County, beginning at the intersection of City Line Avenue and 52nd Street, thence continuing south along 52nd Street to Wynnefield Avenue, thence continuing south along Wynnefield Avenue to Belmont Avenue, thence continuing south along Belmont Avenue to its intersection with Montgomery Avenue, thence continuing in an easterly direction along Montgomery Avenue until the same intersects with the Schuylkill River, thence continuing [in] a northerly direction to City Line Avenue and the place of beginning; all transportation to be upon call by telephone to the carrier's office.

(Reproduced Record (R.R.) at P60-P61.)[1]

On April 3, 2015, PTS filed with the PUC an application for approval of the transfer of rights from Concord to PTS. On March 1, 2016,[2] the Secretary of

---

[1] Citations to the reproduced record are consistent with the pagination in the reproduced record filed by PTS, which does not conform to the requirements of Pa. R.A.P. 2173.

[2] The Secretary of the PUC originally issued a letter on February 5, 2016; however, that letter contained typographical errors. The Secretary of the PUC issued a corrected letter dated March 1, 2016. The typographical errors and the dates of the letters are not relevant to the instant appeal.

the PUC issued a letter notifying PTS that its application was approved, but that the PUC had modified the description of the transferred operating rights. Specifically, the March 1, 2016 letter omitted the portion of the description of operating rights in the City of Philadelphia (the City) and included the following note:

> The transferor's authority originally also included an area in the city and county of Philadelphia. That area now falls under the jurisdiction of the Philadelphia Parking Authority [(PPA)], and this Commission has no power to grant the transfer of that portion of the original authority. Additionally, the words *vice versa* were included by error in the description. These words were only in the transferor's tariff, and not in the original order granting authority; therefore, *vice versa* has not been included.

(R.R. at P67.)[3]

On March 21, 2016, PTS filed a "petition for reconsideration of staff action" with the PUC, arguing that the PUC did not have authority to make material changes to the transferred operating rights. On September 15, 2016, the

---

[3] Specifically, the following language was omitted from the description of operating rights:

> and (2) in that part of the City of Philadelphia, Philadelphia County, beginning at the intersection of City Line Avenue and 52nd Street, thence continuing south along 52nd Street to Wynnefield Avenue, thence continuing south along Wynnefield Avenue to Belmont Avenue, thence continuing south along Belmont Avenue to its intersection with Montgomery Avenue, thence continuing in an easterly direction along Montgomery Avenue until the same intersects with the Schuylkill River, thence continuing [in] a northerly direction to City Line Avenue and the place of beginning; all transportation to be upon call by telephone to the carrier's office.

(R.R. at P61.) Throughout this opinion, we refer to the omitted portion of the transferred operational rights as the "Philadelphia rights."

PUC granted PTS's request, in part, by restoring the *vice versa* rights excluded pursuant to the March 1, 2016 letter. The PUC, however, explained that the PPA, not the PUC, had authority to alter or approve a transfer of operational rights within the City.[4] PTS subsequently filed in this Court a petition for review of the PUC's September 15, 2016 order.

In its petition for review,[5] PTS argues that the PUC violated its right to due process by partially revoking PTS's operational rights without holding a hearing on the issue of whether the Philadelphia rights should be excluded from the certificate. The PUC contends that it had no jurisdiction to include the Philadelphia rights because the authority to grant operational rights within the City is vested solely in the PPA.

Prior to 2004, the PUC was the sole agency responsible for the regulation of taxicab operations throughout Pennsylvania, including the City. With respect to taxicabs operating on a City-wide basis, the PUC's duties and

---

[4] On December 16, 2016, the PUC issued a notice dismissing PTS's application to begin service for failure to comply with certain PUC requirements within 60 days of the "Commission Order/Secretarial Letter" approving PTS's application, presumably referring to the September 15, 2016 order of the PUC. (R.R. at P147.) On January 3, 2017, PTS filed a petition for reconsideration of the December 16, 2016 notice, asserting that because it had petitioned this Court for review of the September 15, 2016 opinion and order, that order was not yet final, and, thus, PTS was not obligated to satisfy the PUC requirements until the final disposition of the instant matter. The disposition of PTS's petition for reconsideration has not been made part of the record and has no bearing on our decision in the instant matter.

[5] Appellate review of a PUC order is limited to determining whether a constitutional violation, an error of law, or a violation of PUC procedure has occurred and whether necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704; *Popowsky v. Pa. Pub. Util. Comm'n*, 910 A.2d 38, 48 (Pa. 2006).

responsibilities were set forth in what was commonly known as the Medallion Act, 66 Pa. C.S. §§ 2401-2416.[6] Concord and PTS, however, are considered "partial rights" taxicab companies, meaning they have been granted authority to operate in part, but not in all, of the City. As partial rights taxicab companies, both Concord and PTS were not subject to the provisions of the Medallion Act, but were, instead, regulated by the Public Utility Code, 66 Pa. C.S. §§ 101-3316.

In 2004, the Legislature enacted an amendment to the Parking Authorities Law (Law),[7] which, *inter alia*, repealed the Medallion Act and transferred jurisdiction and regulation of taxicab service within the City from the PUC to the PPA. The amendment is commonly referred to as Act 94.[8] The PUC retained jurisdiction over the regulation of taxicab service throughout the remaining portions of the Commonwealth.

We have previously held that the PUC continues to regulate taxicab companies with pre-Act 94 rights to the extent that they operate outside of the City. *Germantown Cab Co. v. Pub. Util. Comm'n*, 97 A.3d 410, 417 (Pa. Cmwlth. 2014). We have also held that the PPA regulates taxicab companies with pre-Act 94 rights to the extent that they operate within the City. *Bucks Cnty. Servs., Inc. v. Phila. Parking Auth.*, 104 A.3d 604, 611 (Pa. Cmwlth. 2014). Thus, the Legislature, by enacting Act 94, created a regulatory system in which the PUC

---

[6] Repealed by the Act of December 30, 2002, P.L. 2001.

[7] 53 Pa. C.S. §§ 5501-5517, 5701-5745. The Law is part of the General Local Government Code. *See* 53 Pa. C.S. § 101.

[8] Act of July 16, 2004, P.L. 758.

and the PPA share jurisdiction over the operation of taxicab companies to the extent that such companies operate both within and without the City.

Because taxicab service is considered a public utility, taxicab operators must acquire a certificate of public convenience prior to beginning operations. 66 Pa. C.S. § 1101; *Ronald Cab, Inc. v. Pa. Pub. Util. Comm'n*, 76 A.3d 74, 75 (Pa. Cmwlth. 2013). After approving a transfer of operational rights between taxicab companies, the PUC must set forth and describe the limits of the territory in which the acquiring taxicab company may provide service—*i.e.*, a description of the taxicab company's operational rights. *Susquehanna Area Reg'l Airport Auth. v. Pa. Pub. Util. Comm'n*, 911 A.2d 612, 619 (Pa. Cmwlth. 2006), *appeal denied*, 923 A.2d 412 (Pa. 2007).

With respect to the transfer of "partial rights" within the City, Section 5711(c)(5) of the Law, 53 Pa. C.S. § 5711(c)(5), provides:

> The transfer of a certificate of public convenience, by any means or device, shall be subject to the *prior* approval of the [PPA] which may, in its sole or peculiar discretion as it deems appropriate, attach such conditions, including the appropriate allocation of proceeds, as it may find to be necessary or proper.

(Emphasis added.) Similarly, Section 1103(a) of the Public Utility Code, 66 Pa. C.S. § 1103(a), authorizes the PUC to grant certificates of public convenience to taxicab companies operating outside of the City.[9] The PUC has

---

[9] Section 1103(a) of the Public Utility Code provides:

Every application for a certificate of public convenience shall be made to the commission in writing, be verified by oath or affirmation, and be in such form, and contain such information, as the commission may require by its regulations. A certificate of public convenience shall be granted by order of the commission, only if the commission shall find or determine that the granting of

**(Footnote continued on next page…)**

6

authority to revoke or amend certificates of public convenience upon due cause being shown. *P.D.J. Cab Co. v. Pa. Pub. Util. Comm'n*, 501 A.2d 342, 344-45 (Pa. Cmwlth. 1985).

PTS argues that the PUC violated its right to due process by partially revoking its operating rights without holding a hearing on the issue of whether the Philadelphia rights should be excluded from the description of operating rights. PTS's argument is founded on the presumption that it properly filed an application to approve the transfer of operating rights and was wrongfully denied part of the acquired operating rights without notice and an opportunity to be heard. PTS's argument, however, fails because it is based on the faulty assumption that the PUC had authority to grant those rights even if it held a hearing on PTS's application. As we have previously held, this is not the case.

In *Bucks County*, we reaffirmed "this Court's prior rulings confirming the [PPA's] regulatory reach with respect to [taxicab companies] when providing taxicab service within the City." *Bucks Cnty.*, 104 A.3d at 609. We did not

---

**(continued…)**

> such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public. The commission, in granting such certificate, may impose such conditions as it may deem to be just and reasonable. In every case, the commission shall make a finding or determination in writing, stating whether or not its approval is granted. Any holder of a certificate of public convenience, exercising the authority conferred by such certificate, shall be deemed to have waived any and all objections to the terms and conditions of such certificate.

*See also Lehigh Valley Transp. Servs., Inc. v. Pa. Pub. Util. Comm'n*, 56 A.3d 49, 55 (Pa. Cmwlth. 2012) (describing procedure and requirements for application to PUC for certificate of public convenience.).

conclude that the PPA's authority was limited to enforcing violations of PPA regulations within the City or that the PPA had authority only to issue new certificates of public convenience with operating rights within the City. We also opined that Section 5711(c)(2.1) of the Law, 53 Pa. C.S. § 5711(c)(2.1),

> does not demand that the [PPA] issue a certificate of public convenience to those companies that had existing service rights within the City prior to Act 94's passage. Instead, this section appears to allow the [PPA] to issue certificates of public convenience to provide non-citywide call or demand service. Because, however, [taxicab companies] had that authority prior to the passage of Act 94, they were not required to obtain, and the [PPA] was not required to issue, a new certificate of public convenience.

*Id*. Thus, the portion of those taxicab companies' operating rights within the City has been within the jurisdiction of the PPA since the effective date of Act 94, but the PPA was not required to issue separate certificates of public convenience to taxicab companies with existing rights. Only the PPA, however, has the authority to issue a new certificate of public convenience that includes rights within the City.

Moreover, it does not appear that the PUC expressly deprived PTS of its operational rights by omitting the Philadelphia rights.[10] "Key to the determination of whether a party has been denied procedural due process is

---

[10] To the extent PTS argues that Concord was somehow deprived of its due process rights by the PUC's omission of the Philadelphia rights from PTS's certificate of public convenience, such an argument is irrelevant to the instant matter as Concord is not a party to this action and PTS may not seek to enforce the rights of a third party on appeal. *See Pa. Dental Ass'n v. Dep't of Health*, 461 A.2d 329, 331 (Pa. Cmwlth. 1983) ("One may not claim standing, ordinarily, to vindicate the constitutional rights of some third party [unless] the relationship of the litigant and the third party is inextricably bound up with the activity the litigant seeks to pursue and there is some obstacle to the assertion by the third party of his own right." (internal citation omitted)).

whether that party has suffered demonstrable prejudice." *Sobat v. Borough of Midland*, 141 A.3d 618, 627 n.9 (Pa. Cmwlth. 2016). The March 1, 2016 letter from the PUC noted only that the PUC was without authority to grant a transfer of the Philadelphia rights. The PUC did not express that it was revoking or modifying PTS's rights to exclude the Philadelphia rights. Rather, the March 1, 2016 letter seemed to indicate that PTS would simply need to seek additional approval from the PPA for the transfer of the Philadelphia rights. Thus, PTS fails to demonstrate that the PUC's March 1, 2016 letter caused it "demonstrable prejudice" simply by noting that PTS cannot obtain all of the relief that it seeks from the PUC.

The PPA has held complete authority over taxicab companies providing service within the City since Act 94 went into effect. We now clarify that where a taxicab company possessing operational rights both within and without the City seeks to transfer those rights to another entity, the PPA has exclusive authority to grant, deny, or impose conditions on the transfer of the portion of the operational rights within the City.[11] The PUC retains authority over the transfer of operational rights outside of the City.

_____

[11] During these proceedings, the PUC questioned whether Concord's Philadelphia rights had been cancelled by the PPA pursuant to a July 14, 2016 decision and order in the matter of *Philadelphia Parking Authority v. Concord Limousine, Inc.*, Docket No. C-16-01-035. On May 24, 2017, PTS filed an application with this Court, seeking a remand to the PUC for further consideration and the opportunity to be heard regarding the impact of the PPA's July 14, 2016 decision and order on PTS's application for the transfer of rights from Concord to PTS. By order dated June 8, 2017, this Court denied PTS's application. We note, however, that to the extent that PTS seeks to challenge the PPA's July 14, 2016 decision and order and/or seek approval of the transfer of the Philadelphia rights from Concord to PTS, the PUC does not appear to be the proper forum.

Accordingly, we affirm the PUC's September 15, 2016 order.


_____

P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Transportation   :
Service, Inc.,   :
      Petitioner   :
  :
    v.   :   No. 1709 C.D. 2016
  :
Pennsylvania Public Utility   :
Commission,   :
      Respondent   :

# **O R D E R**

   AND NOW, this 3rd day of July, 2017, the order of the Pennsylvania Public Utility Commission, dated September 15, 2016, is hereby AFFIRMED.

        _____
        P. KEVIN BROBSON, Judge